MARVIN H. CHAMBERLAIN v. CAROLINE M. MURRIN.

*Married women—Liability for goods sold husband.*

1. In a suit upon a note given by a married woman in part payment for liquors, which the plaintiff claims she purchased and agreed to pay for, it is competent for her to show that the saloon business, for which the liquors were purchased, belonged solely to her husband, and that the plaintiff had knowledge of such ownership.

2. A married woman is not liable upon a note given in part payment for liquors purchased for and used in a saloon business owned solely by her husband, or by the two jointly, unless the plaintiff shows an agreement upon the part of the wife to pay for the liquors, and his belief that she was the sole owner of the business when he sold and delivered the liquors, formed from the acts or declarations of the wife which gave him reasonable cause for such belief, and that he looked to her alone. for payment, in which case a recovery may be had.[1]

Error to Wayne. (Gartner, J.) Argued June 10, 1892. Decided June 17, 1892.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Keena & Lightner,* for appellant.

*Edward Minock,* for plaintiff.

MORSE, C. J. This is an action in *assumpsit.* Plaintiff is a wholesale liquor dealer in Detroit, carrying on business in the name of M. H. Chamberlain & Co. Defendant is a married woman, and wife of Thomas P. Murrin.

It was claimed by plaintiff that Mrs. Murrin, in April, 1886, purchased from one Comstock a saloon and restaurant on Shelby street, in Detroit, for $1,800. Comstock,

---

[1] See *Schmidt v. Spencer,* 87 Mich. 121.

was owing plaintiff, and his account against Comstock was turned in towards the purchase, Mrs. Murrin giving him her notes for $600 for such account. These notes were afterwards paid. Plaintiff also gave his check to Mrs. Murrin for $400, which was paid to Comstock on the purchase. For this $400 plaintiff took the note of the husband. The balance of the payment to Comstock was paid, $700 by Mrs. Murrin, and $100 by the husband.

The Murrins kept this saloon and restaurant for about two years, when they exchanged it for property on Holbrook avenue, the title to which was taken by them jointly.

Plaintiff claims that Mrs. Murrin, soon after the purchase, made an agreement for the purchase of all the goods ordered of him and sent to the Shelby-street place. His books showed that all the goods so ordered and delivered were charged to her. A portion of the account was paid, and for the balance the defendant gave her note, of date November 16, 1888, for $388. Some of the goods were receipted for when delivered. Two of the receipts read as follows:

"DETROIT, JULY 5, 1887.

"Received from M. H. Chamberlain & Company, for Mrs. C. Murrin, one barrel of whisky, delivered by Lezott.

"Received by T. P. MURRIN."

"DETROIT, OCTOBER 28, 1887.

"Received from M. H. Chamberlain & Company, for Mrs. C. Murrin, one barrel of whisky.

"Received by T. P. MURRIN."

Mrs. Murrin claims that she had no interest in the business, which belonged to her husband. She testifies that she loaned the $700 to Mr. Murrin. What papers she signed she executed at her husband's request, and because he asked her to do so. She received no money from any one in the transaction of the purchase from Comstock, and paid no money to any one. She denies

that she made any agreement to pay for the goods, and swears that she was never notified by plaintiff, or any one else, that the account on plaintiff's books was running against her; that she never receipted for any goods, and no bills or statements were ever received by her. She explains the signing of the note for $388 by saying that her husband told her she must sign it, or else Chamberlain would get him into trouble. "I, of course, thought I had to do it."

The defendant complains, and, we think, justly, that she was not permitted to introduce certain testimony tending to show that the business was that of her husband. If it was so, she could not bind herself to pay for the goods furnished him, unless by her fraud and deception she had led the plaintiff to believe that it was her business. The evidence of who owned the business was competent, as was also any fact tending to show that plaintiff knew it was the husband's business, and not that of the wife. It is as competent in this State for a married woman to carry on a lawful liquor business as any other business, but the burden of proof was on the plaintiff to show that it was her business.

The court also erred in charging the jury as follows:

"Mr. Chamberlain testifies, in effect, that the place was purchased by Mrs. Murrin, that he would not give any credit to Mr. Murrin, and that, as he understood at that time, the title to the property went to Mrs. Murrin under the bill of sale, and that, by reason of an understanding and agreement or talk with Mrs. Murrin, he furnished these goods in question, and the entire and absolute credit was given to her. I think that is his testimony. Now, it makes no difference whether Mr. and Mrs. Murrin owned the place together, or whether Mr. Murrin owned the place. If you find by preponderance of evidence that it was so understood as Mr. Chamberlain testifies he understood it,—and it is for you to say as to whether that is a fact or not,—and that the entire and absolute credit for the goods furnished at the Shelby-

street place was given to Mrs. Murrin, and no credit was given to any one else but Mrs. Murrin, and that the goods were sold by virtue of that understanding, then, under the law, she would be held responsible. They have introduced in evidence certain books to show that the charges were all made to Mrs. Murrin. It is for you to say as to whether that is the fact. If you determine that to be a fact, then she is liable, and your verdict will be for the plaintiff for $446.72. On the other hand, if the sole and absolute credit was not given to Mrs. Murrin, but Mr. Chamberlain also looked to Mr. Murrin for the payment of those goods, then there would be no liability on the part of Mrs. Murrin. It is entirely and absolutely a question of fact; so far as the law is concerned, there can be no question in regard to it. As I stated, it is only under certain circumstances that a married woman can become liable; and where she makes a contract of this kind, and the entire and absolute credit is given to her, and the party who enters into the understanding gives no credit to any one else, and she understands at the time she enters into the contract, and is cognizant of the fact of an agreement of that kind, then her separate estate is liable. If you find for the defendant, your verdict will be, 'No cause of action.'"

The chief fault in this instruction has been foreshadowed above. It did make a difference who owned the place and conducted the business. If husband and wife were running the business together, it was not her sole business; and if her husband was the sole owner of it, as before said, Mrs. Murrin could not bind herself by any agreement, oral or written, to pay for the goods purchased for use in such business, unless plaintiff supposed it was her business, and was led so to believe by her words or acts. In such case she would be estopped from asserting that it was not her business. Another fault is that the language is such that the jury might have understood that it was a question simply to whom the credit was given, and that if, from the books and other evidence, the jury found that plaintiff gave the sole and absolute credit to defendant, then

he could recover. The receipt of the goods at the Shelby-street place was admitted. One of the issues, then, was, who owned the business? If the wife owned it, then the plaintiff was entitled to recover. If the husband owned it, or the wife and husband jointly, then the plaintiff could not recover, unless he showed not only an agreement upon the part of the wife to pay for the goods, but also that he believed that she was the sole owner of the business when he sold and delivered the goods, and that he was led to this belief by the acts or declarations of the wife which gave him reasonable cause for such belief, and that he looked to her alone for payment.

It is contended by counsel for defendant that, if the business was not the sole business of defendant, she could not by any act or declaration remove her disabilities, and that the doctrine of estoppel cannot be invoked against her. It is settled in this State that a married woman has the same rights as other persons to make contracts for the purchase or sale of property. *Bissell v. Taylor*, 41 Mich. 705; *Tillman v. Shackleton*, 15 Id. 447; *Artman v. Ferguson*, 73 Id. 146. She cannot go into partnership with her husband. *Artman v. Ferguson*, 73 Mich. 146; *Bassett v. Shepardson*, 52 Id. 3. The case of *Artman v. Ferguson*, *supra*, is cited to sustain the contention that if the business was really that of the husband, or belonged to the husband and wife jointly, she could not make herself liable in any event for these goods. It was said in that case that—

"Even in those states in which she may embark in another partnership, and though she holds herself out as such partner, and her means give credit to the firm, she is held not liable for the debts, as she cannot, by acts or declarations, remove her own disabilities;" citing cases.

But such is not this case. Conceding that the wife could contract for this business; that she could have carried it

on after buying it, and made herself responsible for goods bought for use in such business,—there can be no disability of the common law still existing that would prevent her from binding herself, even if the business, as between herself and her husband, was really his. If she went to Mr. Chamberlain, and led him to believe that she was buying the business for herself, and that it was to be carried on by herself, or by her husband as her agent, in her sole interest, and agreed to pay for all goods delivered at her assumed place of business, and the plaintiff believed her, supposed he was selling the goods to her, and received no notice to the contrary, and gave the sole and absolute credit to her under such belief,—then I see no reason why the plaintiff cannot recover, or why the defendant should be permitted to set up her own fraud against such recovery. The contrary doctrine asserts her disability to commit a fraud in a transaction in which, if her representations were true, she had a perfect right to engage the same as any other person.

In *Fechheimer v. Peirce*, 70 Mich., at page 442, it was said:

"Nothing but dealing directly between Amberg and the defendant [a married woman] for a loan to the latter, understood to be a personal loan, could be any consideration for her personal liability."

In that case, if the defendant had gone to Amberg, and borrowed the money, telling him that it was for herself, and he, believing her, had given her the money, and she, in return, had executed her note for the amount, she could not have escaped liability by afterwards claiming that she loaned it for her husband. Nor can she, in like circumstances, do so in this case. If this were permitted, there would be no safety in entering into any executory contract with a married woman, and the right to purchase property upon credit would be in effect denied her, as

no one would take the risk of dealing with her if she might avoid the contract by afterwards claiming that the purchase was for her husband.

The judgment must be reversed, and a new trial granted, with costs of this Court to defendant.

LONG, GRANT, and MONTGOMERY, JJ., concurred. MCGRATH, J., did not sit.