JOHN T. RICH, GOVERNOR OF THE STATE OF MICHIGAN, v. WILLIAM CHAMBERLAIN, WARDEN OF THE STATE PRISON AT JACKSON.

*Constitutional law—Pardons—Transfer of prisoners.*

1. Act No. 150, Laws of 1893, which provides for an "Advisory Board in the Matter of Pardons," and determines its powers and duties, is not in conflict with section 11, art. 5, of the Constitution, which vests the pardoning power exclusively in the Governor, "subject to regulations provided by law relative to the manner of applying for pardons."

2. The power conferred upon the Governor by section 28 of Act No. 118, Laws of 1893, to transfer prisoners from one prison to another, is valid, at least as to convicts sentenced subsequently to the passage of said act, and *mandamus* will lie to

compel such transfer in accordance with the warrant of the Governor therefor.

*Mandamus.* Argued February 26, 1895.. Granted March 19, 1895.

Relator applied for *mandamus* to compel respondent to transfer a convict from the State prison to the House of Correction and Reformatory at Ionia. The facts are stated in the opinions.

*Fred A. Maynard,* Attorney General, for relator.

*Wilson & Cobb,* for respondent.

HOOKER, J.   Act No. 118, Laws of 1893, is entitled—

"An act to revise and consolidate the laws relative to the State prison, to the State House of Correction and branch of the State prison in the Upper Peninsula, and to the House of Correction and Reformatory at Ionia, and the government and discipline thereof, and to repeal all acts inconsistent therewith."

A board of control was provided for each prison, consisting of three members, to be appointed by the Governor by and with the advice and consent of the Senate, of which board the Governor is *ex officio* a member.   These boards were authorized to make general rules for the government of their respective prisons.   Section 28 of this law authorizes the Governor to order the transfer of prisoners from one to another of these prisons, upon the recommendation of the State Board of Pardons.   Upon such recommendation, the Governor issued his order and warrant, as provided in the law under discussion, for the transfer and removal of one William K. Stevenson, a convict, from the State prison to the House of Correction. The warden of the State prison refused compliance, and these proceedings were instituted by the Governor to compel it.

The warden returns that his refusal was in pursuance of a resolution adopted by the board of control of the prison directing him not to obey the command of the Governor, for reasons therein set forth. A copy of this resolution, signed by two of the appointed members, is attached to the answer of the warden.

The authority for transferring prisoners is found in section 28, Act No. 118, Laws of 1893. It is contended that the transfer is a judicial act, and can only be performed by an officer clothed with judicial powers; that the determination of the circuit judge as to the prison in which the convict should be confined is a judicial determination; and that the prisoner has a right to remain in such prison for the period of his imprisonment; or, at all events, that he cannot be summarily removed without a hearing. It is said that the law discriminates between the prisons; that certain offenders cannot be sentenced to the State prison; and that the worst criminals cannot be sentenced to the House of Correction, which is said to be designed for the less hardened class of criminals.

The Legislature has full authority to provide prisons, and to determine where prisoners may be sent; and the courts have no discretion as to the place to which criminals may be sentenced except as the Legislature gives it. Such discretion is lodged with the circuit judges, and they act judicially in its exercise. But this doctrine is a qualified one, or rather the order of the judge is qualified by the law, and such rules and regulations of the prisons as may have been lawfully adopted. Every sentence is subject to these, although it does not mention them. The law requires every person convicted of murder in the first degree to be sentenced to solitary confinement and hard labor for life. Yet, under the law and prison rules, such prisoners are taken from their solitary confinement after a short time, and are allowed to work with other convicts.

Again, all sentences direct that the prisoners be confined in the State prison; but, under the law, they may be hired to do work outside of the walls, in factories or mines or upon the highways, different states having different rules. The sentence is always imposed and received under and interpreted by the law to which it is subject. The judge and the prisoner act with the knowledge of this fact, and must be presumed to understand that, while the judge may or may not sentence a prisoner to one or another institution, there is an existing law under which he may be lawfully transferred. The sentence impliedly subjects him to this when, in the discretion of the proper executive officer or board, crowded prisons or any other reasons require or make it advisable. We need not determine whether this would be applicable to cases of sentence before the law providing for transfer took effect. The judicial act is fully performed by the sentence, which, though in form absolute, involves conditions imposed by law by which the prisoner's rights are limited and to which they are subject; and while the court may not, in terms, sentence certain classes of offenders to one or the other of the prisons, the sentence construed by the law is. to the designated prison, but subject to transfer in accordance to law.

It was urged at the hearing that section 28 is defective, and does not make the necessary provision to protect the rights of the convict; that there is no requirement to transfer his personal effects from one prison to the other; and that no method is provided by which it can be determined whether or not he was entitled to what is called " good time" at the time of the transfer. Doubtless, these are the subjects of rules made by the boards of control, but, if not, the former is of little importance, while, as to the latter, the prisoner might be amply protected by a pre-

sumption of good behavior, unless the contrary should appear.

The action of the Governor, under this statute, must be based upon a recommendation of the advisory board of pardons, and, if such board has no legal existence, its recommendation would be of no validity, and could not be a substantial basis of action by the Governor. This board was established in 1885, and a new act was passed in 1893, under which the present board exists.[1] The board consists of four members, appointed by the Governor by and with the advice and consent of the Senate. The board may appoint a clerk, may hold sessions when and where occasion may require, send for persons and papers, and administer oaths. Its duties are to investigate the cases of convicts, confined in the various prisons, who may petition for pardons or for license to go at large, and to report to the Governor the results of investigations, with such recommendations as, in the judgment of its members, shall seem expedient, either in respect to pardons or commutations, or refusal of pardon or commutation. The act provides, further, that—

"Upon receiving the result of any such examination, together with the recommendations aforesaid, the Governor may, at his discretion, upon such conditions, with such restrictions, and under such limitations as he may deem proper, grant the desired pardon or commutation."

Const. art. 5, § 11, provides that—

"He [the Governor] may grant reprieves, commutations, and pardons, after convictions, for all offenses except treason and cases of impeachment, upon such conditions, and with such restrictions and limitations, as he may think proper, subject to regulations provided by law relative to the manner of applying for pardons. * * * He shall communicate to the Legislature at each session

[1] Act No. 150.

information of each case of reprieve, commutation, or pardon granted, and the reasons therefor."

This section of the Constitution, in express terms, lodges the pardoning power with the Governor, and with it the co-ordinate branches of government have nothing to do, except as the Legislature may by law provide how applications may be made, and is entitled to a report of action taken. *People v. Brown*, 54 Mich. 28; *People v. Moore*, 62 Id. 498; *People v. Cummings*, 88 Id. 251; *U. S. v. Wilson*, 7 Pet. 150; *Ex parte Wells*, 18 How. 307; *Ex parte Garland*, 4 Wall. 333. The power conferred by this section of the Constitution is practically unrestricted, and the exercise of executive clemency is a matter of discretion, subject, perhaps, to the remedy by impeachment in case of flagrant abuse. It cannot, however, be treated as a privilege. It is as much an official duty as any other act. It is lodged in the Governor, not for the benefit of the convict only, but for the welfare of the people, who may properly insist upon the performance of that duty by him, if a pardon is to be granted. As was said by Chief Justice Marshall in *U. S. v. Wilson*, 7 Pet. 160:

"A pardon is an act of grace, proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed. It is the private, though official, act of the executive magistrate, delivered to the individual for whose benefit it is intended."

Lord Coke defines "pardon" as "a work of mercy, whereby the king, either before or after conviction, forgiveth any offense," etc. 3 Inst. 233. See, also, 1 Bish. Cr. Law, § 898.

There are many reasons why a power of this kind should be confided to the highest executive officer. It involves a wide discretion. The proceedings upon the trial may be reviewed. New evidence may be taken upon which to rest

the pardon, thus, in effect, granting a new trial. It may be *ex parte*, after the witnesses have disappeared or are dead. It may and often is based upon an alleged reform of an offender. Youth or age may furnish an excuse for its exercise. Petitions which a good-natured public sign without reading, and importunities of interested persons and friends, may be expected wherever there is hope of success. It is therefore of the highest importance to the public that this power should be carefully exercised, and that the fullest responsibility should rest upon the person to whom it is confided. The office of Governor seems to be generally considered the proper one with which to lodge such responsibility, and the public have the right to insist upon his performance of the duty. Not only is it beyond the power of the Legislature to impose the duty upon others, but it should not in any way lessen his responsibility to the public, when he sets aside the judgment of court and jury by opening the doors of a prison to a convicted felon. If the act in question does this, it should not be sustained. The effect of it is to establish a sort of tribunal open to convicts, where the question of whether they should be pardoned or be licensed to go at large may be tried. The conclusion reached,—*i. e.*, the result,—accompanied by a recommendation, must be certified to the Governor, who then grants or refuses a pardon, as he may think advisable.

We understand that the practice of this board is to conduct its investigations with care and thoroughness, to require notice to be given to the authorities, to reduce proof to writing, and to return the same, with a report in detail, to the Governor. This, however, seems to be under rules of its own devising or prescribed by the Governor, for the act requires nothing of the kind. This is unimportant, however, as it might be remedied by legislation. But the vital defect in the act is that it tends to substi-

tute the judgment of the board for that of the Governor. It can be truly said that the opinions of the board need not be controlling. But the tendency is naturally to offer an opportunity, if not an inducement, to an overburdened magistrate, to depend upon the judgment of a board in which he has confidence, and which has made a more careful investigation than he has made, and to act upon the recommendation of such board, while the public have a right to the fullest exercise of his own understanding and judgment, which they have signified by their Constitution that they desire. This right should not be thwarted or placed in jeopardy by a law whose natural result may be expected to contravene the spirit of the constitutional provision. A loose exercise of the pardoning power is greatly to be deplored. It is inexcusable. It is a blow at good order, and is an additional hardship upon society, in its conflict with crime and criminals,—a conflict which is irrepressible, and in which the criminal has many, and possibly undue, advantages. The erection of a court of pardons is of such doubtful expediency, offering, as it does, an opportunity to the convict—practically within the doors of every prison—to press his suit for pardon, that it should never be permitted until the people have signified a willingness that the safeguards placed in their Constitution be removed. The erection of a court of pardons is to invite unworthy applications. A practice grows up. It offers a premium to pardon-brokers, and the pardon, in place of remaining a matter of high executive discretion, based upon legitimate clemency, degenerates to a routine award of a committee, to be obtained and justified by compliance with fixed rules, and sought as an assertion of right rather than clemency.

This section of the Constitution contemplates that the Legislature may regulate the manner of applying for pardons, but this should not be construed to confer the power

to limit the discretion of the Governor to grant pardons, or to require any other officer to first pass upon the question. All power is taken from the Legislature except that of regulating the manner of applying to the executive. Act 150 does not profess or attempt to do this. Its title is silent upon the one and only subject in relation to pardons which the Constitution permits the Legislature to act upon. It nowhere provides how applications for pardons shall be made, or that such applications shall be uniform. It does not regulate applications for pardons. It provides for a board, which must act in cases where petitions are filed, and gives no authority to the board to act in the absence of petitions. It seems to regulate the board which the act creates, instead of regulating the manner of making application to the only officer authorized to grant pardons. Under the claim that it is prescribing a manner of applying for a pardon, it imposes a duty to investigate and report, and professes to authorize the Governor to act upon such report and recommendation. If this means anything, it is that the Governor may lawfully forego any investigation, and act upon the recommendation of the board, substituting their judgment for his own. The answer to this is that we cannot suppose that the Governor will pay any attention to the recommendation, because the Constitution imposes a duty upon him. The act does not regulate the method of applying for pardons. It does provide for a sort of investigation, which we are told that the Legislature intended should be disregarded. In my opinion, this was not the legislative intent. On the contrary, it was expected that the Governor would do just what the Legislature undertook to provide that he might do, viz., act upon the report and recommendation without personal investigation. If there were no board of pardons, a Governor would not be likely to feel at liberty to grant a pardon upon a mere application, without investigation.

If he did, such a practice would not meet public approval, nor would it be a proper discharge of his duty. Yet the act in question provides that he may do that very thing, and, to sustain the act, the argument must be made that the Legislature did not mean what the language expressly states, but intended that the report and recommendation should be wholly disregarded by the Governor.

Our attention has not been called to a case involving the question that has been discussed. Our own investigation has disclosed that, by most state constitutions, the pardoning power is lodged with the governor, as it is with the President under the Federal Constitution. In several states the power of the governor is restricted, possibly to cut off any danger of an undue exercise of the power. In most of these, however, the consent of the governor is indispensable. It is, however, a significant fact, and one that bears forcibly upon this case, that we have found no instance where a board has been created by statute, but invaribly by constitutional provisions. In Florida, pardons may be granted by the governor, justices of the supreme court, and attorney general, or a major part of them, provided that the governor be one. Const. Fla. art. 6, § 12. In Louisiana, the governor may act by and with the consent of the senate. Const. La. 1868, tit. 3, art. 58. In Maine, after conviction, the governor may pardon, with the advice of a council of seven members chosen by the legislature. Const. Me. art. 5, pt. 1, § 11. In Massachusetts, the governor and a council of eight chosen by the legislature may grant pardons. Const. Mass. chap. 2, § 1, art. 8. In Nevada, the governor, justices of the supreme court, and the attorney general constitute the board. The governor must concur. Const. Nev. 1864, art. 5, § 14. In New Hampshire, the governor acts, with the advice of a council of five elected by the people. Const. N. H. pt. 2, § 52. In New Jersey, the governor, chancellor, and

six judges of the court of errors constitute the board.
The governor must act.    Const. N. J. art. 5, § 10.    In
Pennsylvania, the governor, lieutenant governor, secretary
of state, attorney general, and secretary of internal affairs
constitute the board.    Any three may act.    Const. Penn.
1873, art. 4, § 9.    In Vermont, the governor and a coun-
cil consisting of the lieutenant governor and 12 council-
men, to be elected by the people, exercise the pardoning
power.    Const. Vt. 1793, chap. 2, § 11.    Michigan appears
to be the only state that has attempted to regulate the
matter of pardons by statute.    As we have already said,
the subject is expressly removed from legislative interfer-
ence, and we think that the law of 1893, providing for
the advisory board, is clearly unconstitutional.    Being so,
said board could not lawfully make the recommendation
which is a condition precedent to an order to transfer a
prisoner.

We think that the writ should be denied.

McGRATH, C. J., concurred with HOOKER, J.

GRANT, J.    We concur in the opinion of Brother
HOOKER, except that portion wherein he holds the law
providing for the board of pardons to be unconstitutional.
We also agree with him in saying that "the pardoning
power should be carefully exercised, and that the fullest
responsibility should rest upon the person to whom it is
confided."    That power is vested exclusively in the Gov-
ernor of the State, and any law which restricted this power
would be unconstitutional and void.    While, however, the
Constitution unqualifiedly vests this power in the Governor,
it, at the same time and with equal clearness, vests in the
Legislature the power to provide, by law, regulations
relative to the manner of applying for pardons.    Article
5, § 11.    Under this power, it would clearly be competent
for the Legislature to provide as regulations that the

petition or application should be under oath; that it should be first submitted to the judge and prosecuting attorney, for them to indorse thereon or attach thereto such statements as they might deem proper to make touching the merits of the application, and designed to furnish the Governor information upon which to base his action; that the testimony taken upon the trial, if it exists, should accompany the petition; and that testimony under oath should be taken at the prison or elsewhere bearing upon the reasons urged in the petition for pardon. Is there any doubt of the right of the Governor under this constitutional provision, without any act of the Legislature, to ask the opinion or advice of any of these officers, or to ask either to examine the facts upon which conviction was based, the conduct of the prisoner, or any other material facts, and report to him, without any abandonment of his constitutional duty? How else can he obtain the necessary facts upon which to base intelligent action? In the absence of any law providing regulations, the Governor possesses the undoubted right to require, as a condition precedent to the consideration of an application, that it shall be accompanied by these statements. Certainly, a law which imposes no other regulations than those which he himself might impose is not unconstitutional. No Governor ought to pardon without having before him the facts upon which the conviction was based, as well as the conduct of the prisoner after conviction. This law does nothing more than to prescribe the methods and regulations for obtaining this information which is so necessary for an intelligent and proper exercise of the pardoning power. The section of the act upon which is based the alleged unconstitutionality reads as follows:

"It shall be the duty of said board to investigate the cases of such convicts now or hereafter confined in the State prisons and house or houses of correction as may

petition for pardon or for a license to be at large, and to report to the Governor the results of their investigations, with such recommendations as in their judgment shall seem expedient either in respect to pardons or commutations, or refusal of pardon or commutation.    Upon receiving the result of any such examination, together with the recommendations aforesaid, the Governor may at his discretion, upon such conditions, with such restrictions, and under such limitations as he may deem proper, grant the desired pardon or commutation, which warrant shall be obeyed and executed instead of the sentence originally awarded." Laws of 1893, Act No. 150, § 6.

It was not the purpose or intention of this act to infringe upon the constitutional prerogatives or power of the Governor.    The name given to the board in section 1— viz., "The Advisory Board in the Matter of Pardons"— clearly indicates this.    In practice, as shown in Brother HOOKER's opinion, the board assumes none of the power of the Governor to pardon, but recognizes its sole duty to be to gather information; and for this purpose it conducts its investigation with care and thoroughness, requiring notice to the authorities, and proofs to be taken and returned to him for his examination.    The fact that such board is authorized to make recommendation is no infringement upon executive power.    It might as well be held that the report and recommendation of the circuit court commissioner, to whom a case in equity has been referred, are an infringement upon the power of the court, upon which the Constitution and the law have conferred exclusive jurisdiction.    It has been a common practice heretofore for the trial judge, the prosecuting attorney, and the jury who tried the prisoner to recommend to the Governor that he be or be not pardoned.    It might as well be held that such recommendations were an unconstitutional interference with his power as to hold that the recommendations of this board are unconstitutional.    The recommendations in the one case are of no greater sig-

nificance than in the other. In neither case have they any binding force upon him, and the law neither provides nor intends that they shall have. We hold the law to be constitutional, and the power to transfer convicts from one prison to another valid.

The writ must issue.

LONG and MONTGOMERY, JJ., concurred with GRANT, J.