VOSBURG  v.  BROWN.

1. MARRIED WOMEN—LIABILITY FOR LOAN—APPLICATION OF PRO-
CEEDS—REPRESENTATIONS BY HUSBAND IN WIFE'S PRESENCE.
A statement made by a husband, in the presence of his wife
and of a third person, from whom a loan was procured upon
the wife's note, that, if the wife took the money, she could
pay off a mortgage on her property, is equivalent to a decla-
ration that the wife desired the money for that purpose, and
if relied on by the lender, and knowingly acquiesced in by the
wife, her separate estate is answerable for its repayment,
whether the money was actually used by the wife or not.

2. SAME—PRESUMPTIONS.
It may be presumed, in the absence of evidence to the contrary,
that a wife heard representations shown to have been made
by her husband to a third person at a time when the three
alone were dining together at her table.

3. SAME—INSTRUCTIONS.
An instruction which permits the jury to find that a wife made
certain representations as to the purpose of a loan procured
on her note, when the evidence is all to the effect that the
representations were made by her husband in her presence,
and were heard and acquiesced in by the wife, is not preju-
dicial error, the wife's responsibility being in either event
the same.

4. WITNESSES — CROSS - EXAMINATION — DEPOSITIONS — REFRESHING
RECOLLECTION.
The court's refusal to permit the defendant to refresh her recol-
lection by reading her deposition given on a former trial
before she was examined concerning it is not reversible error,
when nothing prejudicial to her case was elicited.

Error to Oakland; Smith, J.    Submitted February 7,
1899.    Decided April 18, 1899.

*Assumpsit* by Hiram Vosburg against Caroline Brown
upon a promissory note.    From a judgment for plaintiff,
defendant brings error.    Affirmed.

*A. & S. H. Perry*, for appellant.

*Elmer R. Webster* and *George O. Kinsman* (*James H. Lynch*, of counsel), for appellee.

LONG, J.   Plaintiff recovered judgment against defendant upon a promissory note, made and executed by her, for $160.   The defense interposed was that the note was given to secure moneys loaned to her husband, and that they were not had for her separate estate.   Defendant is a married woman, living with her husband in the village of Oxford.   They occupied apartments over a store, the whole building being the separate property of the wife. Plaintiff testified on the trial that he saw defendant's husband at his (plaintiff's) house, April 16, 1895, and had some talk with him in regard to the money; that on April 18th he went to defendant's rooms, and saw defendant and her husband, and that the defendant then said that he (plaintiff) was expected to be there on that date to bring up some money; that he stayed to dinner, and that at table the following occurred:

"Mr. Brown said, 'Carl [meaning his wife] will be fixed all right if she takes that money from you;' that she could use it for the purpose he had made known to me.

"*Q*. What did he say that was?

"*A*. To finish paying her mortgage coming due soon.

"*Q*. Did he say what mortgage?

"*A*. He didn't name who held the mortgage, but the mortgage on her place.

"*The Court:* Was Mrs. Brown present when that was said?

"*A*. Yes, sir.

"*Q*. This conversation occurred at the dinner table?

"*A*. At the dinner table.   I know Mrs. Brown owned that place from what Mr. Brown told me when he was at my house.   *   *   *   After dinner, Mrs. Brown and I were sitting in the dining room, speaking about making payments on this note.   She asked me if I would receive as small as $25 at a payment, and I said, 'Yes; after 18 months' time elapses.'   *   *   *   Mr. Brown said that, if I would bring up the money with me, she would sign it [the note].   *   *   *   I drew the note myself.   I handed

it to them to put their signatures on. They took it, Mr. and Mrs. Brown, and passed into the other room to put their signatures on it, and brought it back to me. When they brought it back, both signatures were on it. Mrs. Brown gave me the note. I counted out $160. \* \* \* I went back again in about an hour. Mr. and Mrs. Brown were there. I said I had done wrong, and I was dissatisfied with the note that she gave me. I said I had done wrong in allowing Brown to put his signature on it. \* \* \* I said, 'It hurts the note, because I don't look to Brown for my pay.'"

The plaintiff then testified that he drew up another note (the one in suit), and Mrs. Brown alone signed it, and then destroyed the first one; that Mr. Brown was there during all that time. Plaintiff also testified, under objection, that when Mr. Brown was at his place, on April 16th, he stated that he wanted to borrow the money for his wife.

On the defense, Mr. Brown was called as a witness for his wife, and testified that on April 16th, when he went to see the plaintiff, he told him he wanted to let him have a note of $160 he held against his (witness') son, Frank Brown, and plaintiff said he did not want that, but that he would take his (witness') note if his wife would sign it; that he told him he would see his wife, and see if she would sign it; that he did not tell plaintiff he wanted to borrow the money for his wife; that, while there was a past-due mortgage on his wife's property, the parties were in no hurry for the money. As to what took place when the plaintiff came to his house, Mr. Brown stated substantially:

"He said he had got the money, and he could let me have it if I would get my wife to sign it, and I told him I had talked with her, and she said she would. He drew the note, and I signed, and my wife was in the kitchen, and I stepped to the door and spoke to her, and she came in and signed the note, and stepped right out again. \* \* \* My wife was not present when I took the money. She had no conversation with Mr. Vosburg on that occasion. \* \* \* There was no conversation at the dinner table

about the note at all. He went out a few minutes after dinner. I saw him again at our house in about two hours. * * * 'Well,' he said to me, 'I don't really like this note. Can't you get her to give her note alone?' And I said: 'I don't know; I presume so.' I talked with her a little about it, and she said she would, and he drew up another note, and she signed it, and, after she signed it, I picked up that note there and put it in the stove. Mrs. Brown did not have any of the proceeds of that deal. * * * Every dollar of that money I used myself. There was never any talk between me and my wife about borrowing it or having it for her use. She never authorized me to make any assurances or statements of that character."

This testimony is corroborated by the defendant.

The first assignment of error relates to the ruling of the court in permitting an answer to be given to the following question addressed to the plaintiff, and in refusing to strike out such answer:

"*Q.* State whether or not, at the time you loaned this money to Caroline Brown, you relied upon the representations that had been made by Henry Brown in the presence of Caroline Brown, his wife?"

It is the contention of counsel for defendant that the words spoken cannot be held to be such representations on the part of the wife as to support a verdict; that is, that even if Mr. Brown said to the plaintiff, "Now, if my wife, Carl, takes that money from you, she can pay up her mortgage, and be fixed all right," this would not support the verdict.

It will be remembered that the plaintiff testified that this statement was made while the parties were at the dinner table, and that Mrs. Brown was present. It is true that the defendant and her husband both deny this statement, and the plaintiff's case must hinge upon his own testimony. It was a question for the jury to determine whether this statement was made. Under the circumstances, it must be presumed that, if such statement was made, the defendant heard it and acquiesced in it, thereby assenting to the proposition that the money was borrowed for and on ac-

count of her separate estate.   The court below must have so understood it, as he charged the jury:

"If you find from the evidence in this case that Mr. Vosburg loaned the money to Mrs. Brown on the representations made by her husband, in her presence, that she desired the money for the purpose of making a payment on a mortgage against her own property, and that Mr. Vosburg relied on those representations,—and I add these words, 'in good faith, supposing them to be true,'—then it is immaterial as to what became afterwards of the money. Whether it was applied for the benefit of her separate estate or not, you must find for the plaintiff."

The testimony was competent, and the court was not in error in the above portion of his charge.   Taking the circumstances and conversations together as they occurred between the parties, according to the testimony of the plaintiff, they were equivalent to the defendant's declaration that she wanted to borrow the money to pay off a mortgage on her own property; and, under well-settled rules, it did not matter whether she afterwards did so or not; she would be bound to answer for it out of her separate estate.   *McVey* v. *Cantrell,* 70 N. Y. 295 (26 Am. Rep. 605).

It is also contended by counsel for defendant that the court was in error in certain other portions of the general charge, in which the court said:

"It is the contention of the plaintiff　*　*　*　that either she, or her husband in her presence,—I will leave it that way; you will remember which way it is,—stated again that she wanted this money to make a payment upon a mortgage upon her property, and Vosburg, supposing that to be true, and relying upon it, accepted her note and made the loan to her," etc.

Again:

"If the statement of Mr. Vosburg is true, that he made the loan to Mrs. Brown on the representations made by her, or by her husband in her presence, that the loan was for her benefit," etc.

And again:

"If you should find from all the evidence that she either made such statements as he claims at Oxford, or her husband made them in her presence, and she understood them, * * * she is estopped now from setting up a defense on the ground that the money was used for something else."

The contention is that there was no testimony given in the case showing, or tending to show, that the plaintiff claimed on the trial that Mrs. Brown, the defendant, made any such statement herself, but that all the plaintiff claimed was that Mr. Brown made the statements in the presence of his wife. In the charge the court seems to have been uncertain which made the statement, and he left it to the jury to say. They could not have been misled by this. They had the testimony before them. In fact, it could not matter which made the statement. If the husband made it in the wife's presence, and she heard it, it was, as we have said, equivalent to a statement from her of the fact; and it further appears from the plaintiff's testimony that she entered into a talk with him as to how the money could be paid back,—whether in sums of $25 or not. The case is very different from the cases of *Chamberlain* v. *Murrin*, 92 Mich. 366, *Fechheimer* v. *Peirce*, 70 Mich. 440, and *Fisk* v. *Mills*, 104 Mich. 436, cited by counsel for defendant.

It is contended, however, that the charge entirely left out of consideration the defendant's understanding and belief. We think not. Each time the subject of borrowing the money was referred to in the charge, the court stated particularly if Mr. Brown made such statements in his wife's presence, and she understood them, and Mr. Vosburg relied upon them, etc., the defendant would be liable. The parties were in close proximity to each other; and if she understood what her husband said, and did not then and there repudiate the statements, the plaintiff had a right to rely upon the statements as true, and to suppose that the money was being borrowed to pay off this mortgage.

Some contention arises over the use made on the trial of the deposition of the defendant, taken in justice's court when the present case was on trial there. While the defendant was being cross-examined as a witness, she was asked several questions as to what she testified to in the deposition. This was objected to unless the deposition should be first submitted to her to refresh her recollection. This was overruled, and certain questions asked and answered; whereupon the deposition was shown witness, who admitted that it was her deposition, and contained her signature. The witness was thereafter fully examined by counsel for both parties. While within the rule of *Lightfoot* v. *People*, 16 Mich. 513, and the cases following that in this court, the witness was entitled to have the deposition read to her before being examined upon it, if she had so asked, we are of the opinion that there was nothing drawn out on such examination which had any tendency to prejudice the defendant's case. The deposition was put in evidence, and counsel had an opportunity to comment upon it.

We think no other question need be discussed.

We find no error in the record, and the judgment must be affirmed.

The other Justices concurred.