[Criminal No. 374.  Filed April 12, 1915.]

[147 Pac. 738.]

KNOX LAIRD, Petitioner and Appellant, v. ROBERT B. SIMS, Superintendent of the State Prison of Arizona, Respondent and Appellee.

1. PARDON—CONSTITUTIONAL PROVISIONS.—The pardoning power is not inherent in any state officer or department, but the people, in adopting a Constitution, may confer the power on officers or departments as they see fit.

2. PARDON—CONSTITUTIONAL PROVISIONS.—Under Constitution, article 5, section 5, declaring that the Governor shall have power to grant pardon after conviction on such conditions and with such restrictions and limitations as may be provided by law, Penal Code of 1913, sections 1301, 1302, creating a board of pardons with exclusive power to pass on and recommend pardons, and declaring that no pardon shall be granted by the Governor unless recommended by the board, adopted by the people at a referendum, is valid.

3. CONSTITUTIONAL LAW—STATUTES—VALIDITY.—The court will sustain a statute, if possible, and, if it entertains any doubt of its invalidity, it will resolve the doubt in its favor and sustain it.

4. CONSTITUTIONAL LAW—CONSTITUTIONAL PROVISIONS—CONSTRUCTION. The court, in construing a constitutional provision, will, if possible, ascertain and give effect to the intention of the framers of the Constitution; and, where the language is plain and easily understood, it will be construed without extrinsic aid.

[As to definition and effect of pardons, see note in 59 Am. Dec. 572. As to conditional pardons, see note in 111 Am. St. Rep. 108. As to power of Governor to pardon as confined to offenses against state, see note in Ann. Cas. 1914A, 484.]

APPEAL from a judgment of the Superior Court of the County of Pinal. O. J. Baughn, Judge. Affirmed.

The facts are stated in the opinion.

Mr. S. L. Pattee, for Appellant.

Mr. Wiley E. Jones, Attorney General, for Appellee.

ROSS, C. J.—The petitioner, Knox Laird, was serving in the state prison a term of not less than ten years commencing September 29, 1913, as punishment, after conviction, of the crime of murder. On February 25, 1915, the Governor of the state granted him an unconditional pardon. He accepted the pardon, but the appellee, superintendent of prison, refused to discharge him. In his petition he set forth the above facts, and prayed for a writ of *habeas corpus* directed to the appellee. The writ was issued.

In his return to the writ, the appellee admitted the allegations of the petition, and stated that he declined to recognize the pardon for reason that the application for such pardon was not passed upon or recommended by the board of pardons and paroles, nor was any application for a pardon ever presented to said board. The petitioner demurred to the return and the sufficiency thereof to show that his detention was legal. The demurrer was overruled, and judgment dismissing the petition and remanding petitioner was entered, from which judgment this appeal is prosecuted.

While the facts of the case are simple and easily understood, the question they present for our determination is a serious one. It is: Who, under our Constitution and laws, is empowered and authorized to grant pardons. Every civilized country recognizes, and has therefore provided for, the pardoning power to be exercised as an act of grace and humanity in proper cases. As was said by Justice WAYNE in *Ex parte Wells*, 18 How. 307, 310, 15 L. Ed. 421:

"Without such a power of clemency, to be exercised by some department or functionary of government, it would be most imperfect and deficient in its political morality, and in that attribute of Deity whose judgments are always tempered with mercy."

The state, in adopting a Constitution, recognized it as a fixed and desirable institution, and, accordingly, incorporated it in its fundamental law. It is not a power, under our system of government, inherent in any officer of the state, or any department of the state. The people, in framing and adopting their Constitution, could have lodged the power in the legislature, or in the Governor, Secretary of State, and auditor, or either of them, or in the members of this court, or either of them, or as has been done in some of the state Constitutions, in a board of pardons.

The provision in our Constitution concerning the pardoning power is in the following language:

"The Governor shall have power to grant reprieves, commutations and pardons, after convictions, for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as may be provided by law." Article 5, sec. 5.

Omitting from this section such words as have no effect or bearing upon the question here involved, it would read:

"The Governor shall have power to grant . . . pardons, after conviction, . . . upon such conditions and with such restrictions and limitations as may be provided by law."

It is contended by the Attorney General that the "conditions, restrictions, and limitations" here mentioned bear upon and qualify the power to grant pardons, and it is contended by appellant that those words bear upon and qualify the pardon itself. The Attorney General would paraphrase it thus:

"The Governor shall have power, upon such conditions and with such restrictions and limitations as may be provided by law, to grant pardons."

And appellant would have it read:

"The Governor shall have power to grant conditional pardons; that is, pardons containing conditions, restrictions and limitations upon the conduct of the grantee thereof."

Neither contention is unreasonable; both are plausible. The legislature evidently took the former view. At its first session it passed, over the Governor's veto, an act that was subsequently referred to the people, and by them approved at the 1914 November election, which undertakes to limit and restrict the Governor's pardoning power. We conceive it to be the duty of this court to sustain such law if possible. We

will not seek excuses to declare it invalid, but rather strive to find reasons to sustain it. If, after a comparison of its terms with the terms of the Constitution, we entertain any doubt of its invalidity, we should and will resolve that doubt in its favor and sustain it. So much is due to a co-ordinate branch of the government; especially so when the legislative act has been submitted to, and received the approval of, the people.

The act referred to is found in the Penal Code of 1913, as "Title XXI—Pardons and Reprieves," and is subdivided into sections 1297 to 1307, inclusive. Section 1297 reads:

"The Governor has power to grant reprieves, commutations, and pardons, after conviction, for all offenses, except treason, and cases of impeachment, upon such conditions and with such restrictions and limitations as he may think proper, subject to the regulations provided in this chapter."

"The regulations provided in this chapter" that are material are contained in section 1301, which creates a board of pardons and paroles consisting of the state superintendent of public instruction, the Attorney General, and a third member, to be selected by those two, and section 1302, which provides that:

"Said board shall have exclusive power to pass upon and recommend reprieves, commutations, paroles and pardons, and no reprieve, commutation, parole or pardon shall be granted by the Governor unless the same has first been recommended by said board. All applications made for reprieves, commutations, paroles and pardons made to the Governor shall be at once transmitted by the Governor to the chairman of the said board, and the said board shall return the same with their recommendation to the Governor."

It is a cardinal principle of constitutional construction to give to a Constitution and its provisions the meaning, if possible of ascertainment, intended by its framers. It is a perversion to give it any other meaning. If the language used is plain and easily understood, it should be looked to without extrinsic aid for the meaning intended. In this instance the qualifying words used in section 5, article 5, of the Constitution may refer to and modify the "power" as reasonably as they may be said to refer to and qualify the "pardon." Did the men who wrote the Constitution intend that the Gov-

ernor of this state should have unlimited and unrestricted power to issue pardons? It is a matter of common knowledge that at the time or just prior to the convening of the constitutional convention considerable feeling and criticism were indulged by the people of the territory over what was generally thought to be an abuse of the pardoning power, and no one knew it better than the members of the convention. The language used in our Constitution defining the pardoning power is not to be found in any other Constitution of any other state of the Union, and the difference is significant. It is not unreasonable to assume that the convention endeavored to so word section 5 of article 5 as to prevent a recurrence of an indiscriminate exercise of the pardoning power. There is a manifest lack of intention to follow the language of the organic laws of the territory. The pardoning power of that act was placed in the Governor in these words:

"He may grant pardons and reprieves and remit fines and forfeitures, for offenses against the laws of the territory. . . ."

Comparing our constitutional provision with that of Michigan, the language used is in the main identical, but the difference in meaning is so pronounced as to strike one with surprise and wonder. This difference is not accidental or inadvertent. It is evidently for a purpose. We give the Michigan constitutional provision:

"He [the Governor] may grant reprieves, commutations and pardons after conviction, for all offenses except treason and cases of impeachment, upon such conditions, and with such restrictions and limitations, as he may think proper, subject to regulations provided by law, relative to the manner of applying for pardon." Article 5, sec. 11.

In the Michigan Constitution the pardoning power is given to the Governor to be exercised "as he may think proper"; while under our Constitution it is lodged in the Governor with conditions and restrictions and limitations to be provided by law. The appellant, in support of his contention that our legislative act is repugnant to the Constitution, among other cases, relies upon *Rich* v. *Chamberlain,* 104 Mich. 436, 27 L. R. A. 573, 62 N. W. 584. This case involved the constitutionality of an act of the legislature creating a board of pardons whose duty it was to investigate petitions for

pardons, and make reports thereof to the Governor with recommendations, but it was not attempted to make the recommendations binding upon the Governor. The act was sustained. In the opinion it was held that the pardoning power was exclusively vested in the Governor, and any law restricting the power would be unconstitutional; but "at the same time" the court said, "and with equal clearness [the Constitution] vests in the legislature the power to provide by law, regulation relative to the manner of applying for pardons." It seems that no other conclusion was possible under the Michigan Constitution, and, if our constitutional provision was the same, giving the Governor the right to exercise the power "as he may think proper," the question we have would be easily determined.

Another case relied upon by appellant is *In re Ridley,* 3 Okl. Cr. 350, 26 L. R. A. (N. S.) 110, 106 Pac. 549. This case involves the constitutionality of an act creating a board of pardons and paroles, and conferring on it the duty to investigate petitions for pardons, and prohibiting the exercise of the power of pardon by the Governor, except upon its recommendation or advice. The Oklahoma Constitution (article 6, section 10) is as follows:

"The Governor shall have power to grant, after conviction, . . . pardons for all offenses, . . . upon such conditions and with such restrictions and limitations as he may deem proper, subject to such regulations as may be prescribed by law."

The Oklahoma court, in the Ridley case, followed the reasoning of the opinion in the *Rich* v. *Chamberlain* case, *supra,* as it might well do, the language of the two Constitutions of Michigan and Oklahoma being, in the former, that the Governor may grant pardons "as he may think proper," and the latter "as he may deem proper."

The California Constitution (article 7, section 1) is the same as the Michigan constitution; the provision being that the Governor may grant pardons "as he may think proper." Of course, when language of that kind is used, it forecloses all debate and all controversy. It is too plain to quibble over. The constitutional convention did not, however, copy the language of the Constitution of California or Michigan or Oklahoma, nor is the language used equivalent in meaning to that

used in those Constitutions or the Constitution of any other state of the Union.

The first legislature of the state, very soon after the promulgation of the Constitution, with the language of section 5, article 5, before it, language not to be found in any other Constitution, and therefore without judicial construction, passed the act in question, and in doing so construed the "conditions, restrictions and limitations" as qualifying the pardoning power, and not the pardon itself.

A reference to the journals of the third session of the legislature, at page 300, discloses that on May 16, 1913, the Senate, over the Governor's veto, passed House Bill No. 1, of which the sections creating the board of pardons and paroles were a part, with but one dissenting vote. In the Senate were members voting for the measure who had distinguished themselves as leaders of the constitutional convention. In the House the measure was approved notwithstanding the veto by a vote of 25 in the affirmative and 6 in the negative; one of those voting in the affirmative and one voting in the negative having been members of the constitutional convention. The president of the Senate, lately deceased, perhaps contributed more than any single individual in the making of the Constitution, as well also the laws enacted at the first session of the legislature, and his well-known probity, ability and fidelity to the fundamental law forbid the thought that he would vote for any legislative act inimical to that sacred instrument. He and those other members of the convention that wrote the Constitution, and later as lawmakers voted for the creation of the board of pardons and paroles, must have endeavored only to carry out the intention of the convention as they wrote it into the Constitution. This measure was later referred to the people. After the delegated authority had passed it, the action of the delegates was approved, affirmed and ratified by the source of all authority—the people themselves. At the polls, after a thorough campaign of publicity, both by proponents and opponents of the measure, the people, the ultimate and final source of all power in a democratic form of government, placed their construction on section 5, article 5, of the Constitution by approving the creation of the board of pardons and paroles and the power lodged in it. The sovereign people have said that the power

of pardon may be conditioned, restricted and limited to the extent of forbidding its exercise except upon the recommendation of the board of pardons and paroles. In *Frost* v. *Pfeiffer*, 26 Colo. 338, 349, 58 Pac. 147–151, the court had occasion to consider what effect, if any, should be given to legislative construction made immediately after the adoption of the Constitution of Colorado. It was said:

"Another matter which it is proper to notice in connection with the construction of the constitutional provision under consideration is the contemporaneous construction thereof given by the legislative department of the state. It is a fact of which we take judicial notice, for it appears in the laws of the state, that the first legislature which convened after the adoption of our Constitution created no less than four new counties, without in any manner submitting the question to the people directly interested. It is a matter of history that several members of this General Assembly had been members of the constitutional convention. . . . Contemporaneous legislative construction of the fundamental law, while not controlling upon the courts, yet, in case of doubt or ambiguity, is entitled to great weight, as expressive of the views entertained by those of the meaning of that law whose mandates they are bound to observe."

Endlich's Interpretation of Statutes, section 527, says:

"The deference due to such legislative exposition is said to be all the more signal when the latter is made almost contemporaneously with the establishment of the Constitution, and may be supposed to result from the same views of policy and modes of reasoning that prevailed among the framers of the instrument thus expounded."

In *Manufacturing Co.* v. *Ferguson*, 113 U. S. 733, 28 L. Ed. 1137, 5 Sup. Ct. Rep. 741, the supreme court of the United States said:

"The act was passed by the first legislature that assembled after the adoption of the Constitution, and has been allowed to remain upon the statute book to the present time. It must therefore be considered as a contemporary interpretation, entitled to much weight."

8 Cyc. 737 states the rule as follows:

"Practical construction of constitutional provisions by the legislative department, in the enactment of laws, necessarily

has great weight with the judiciary, and is sometimes followed by the latter when clearly erroneous.''

6 R. C. L., section 60:

''The principle of contemporaneous construction may be applied to the construction given by the legislature to the constitutional provisions dealing with legislative powers and procedure. Though not conclusive, such interpretation is generally conceded as being entitled to great weight, and should not be departed from unless manifestly erroneous.''

In view of the exceptional novelty of the provision in our Constitution, and its susceptibility of two interpretations, one as reasonable as the other, and the legislature and the electorate of the state having adopted the construction limiting and restricting the pardoning power to cases recommended by a board of pardons created by legislative act, we must confess we entertain most serious doubts of the invalidity of the act, and following the rule universally followed in such case, we think the judgment of the trial court should be sustained.

In another case recently decided by this court we had occasion to state what we conceived to be the duty of the court in passing upon the validity of a statute attacked for repugnancy to the Constitution. In that case we said:

''That legislation of such a character may to some seem unwise, unjust or impolitic does not authorize the courts to interfere. When the law-making power has determined such matters, such questions are thereby foreclosed. Nor is the purpose and motive for the exercise of such legislative power a subject for judicial inquiry. Questions relating to the wisdom, policy, and expedience of such enactments are addressed to the law-making branch of the government. Likewise we may not concern ourselves with a consideration of the evils which, it is suggested, may or may not arise from the execution of the law, whether they be real or imaginary. Unless there be some constitutional provision which prohibits the enactment, the power is with the people to determine from time to time the occasion, and what laws and regulations are necessary and expedient for their benefit. The judicial department does not make the laws, but is confined to ascertain if the power to pass them exists, and, when such power is found, then to construe and enforce them as made. A pronouncement of the invalidity of an act or any part of

XVI Ariz.—34

an act of the people in their legislative capacity is, and must always be, approached with a delicacy which the situation invites. Under our oaths as judges, this power must be exercised in cases; but neverthless it is our plain duty to uphold an act of the law-making power whenever it is possible to do so. Every presumption is in favor of its validity, and the conflict between the legislative act and a constitutional provision must be very clear and utterly irreconcilable by any reasonable interpretation before this court would be called upon to annul the act or any separable part of it." *Gherna* v. *State, ante,* p. 344, 146 Pac. 494, 501.

Our lawmakers, keeping step with the advance thought concerning the treatment of prisoners, have provided a scheme or system of paroles. The duties of carrying out and effectuating this system is lodged in the board of pardons and paroles. This board is provided a clerk appointed by the Governor at a stated salary of $1,200 per year, with duties as provided by law and the board. The board is required to meet at the state prison from time to time, at which meetings all prisoners who have served the minimum sentence, when it is an indeterminate sentence, as well as those serving definite or fixed sentences, may appear and apply for a parole or an absolute discharge. The legislature has not authorized the Governor to grant paroles except upon the recommendation of the board of pardons and paroles. Section 5, article 5, of the Constitution does not mention paroles. If the board of pardons and paroles has no legal existence, and may not exercise the powers granted it by the legislature, there is no power vested in anyone to release convicts, however deserving, upon parole. See Pen. Code 1913, secs. 1449–1458. But, if the board has a legal existence, it may administer this very meritorious feature of modern and enlightened prison reform. If the legislation here assailed should be declared void, and the contention of appellant sustained, he and others might seek and receive pardons at the Governor's hands; but the Governor would be powerless to release on parole. With perhaps one or two exceptions, the courts of this country have recognized the validity of legislative boards vested with the power and duty of administering parole laws (*State* v. *Wolfer,* 119 Minn. 368, Ann. Cas.

1914A, 1248, 42 L. R. A. (N. S.) 978, 138 N. W. 315, 6 R. C. L. 173), and, we think, rightly so.

Judgment affirmed.

FRANKLIN, J., concurs.

CUNNINGHAM, J., Dissenting.—By article 3 of the Constitution the powers of government are "divided into three separate departments, the legislative, the executive, and the judicial," and each is forbidden the right to exercise the powers of the other. Article 4 defines the powers and duties of the legislative department. Article 5 defines the powers and duties of the executive department. Article 5, entitled "Executive Department," section 5, is as follows:

"The Governor shall have power to grant reprieves, commutation, and pardons, after convictions, for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as may be provided by law."

If the pardoning power was not intended to be given to the Governor, the language used in article 5 defining the powers and duties of the Governor is without legal effect, and is meaningless.

The legislature, at the third special session of its first session, passed, over the Governor's veto, an act that was subsequently referred to the people and by them approved at the 1914 November election, which undertakes to deprive the Governor of this pardoning power. The act so passed was subjected to the referendum power, and the act was, by a vote on the question submitted, sustained. By this proceeding and its results no more binding effect can be given the law than can be given an ordinary act of the legislature. Had it been initiated and enacted by the people, its effect would be no different. "Any law which may not be enacted by the legislature under this Constitution shall not be enacted by the people." Section 14, art. 22, State Constitution. Referred and initiated laws cannot be given the force and effect of amending the Constitution; neither can they be sustained when repugnant to the Constitution, although they may have had the popular approval. This act has as much sanctity and vitality as an act of the legislature, but no more.

The act in question appears in the Penal Code as "Title XXI—Pardons and Reprieves," and is subdivided into sections 1297 to 1307, inclusive. Section 1297 is as follows:

"The Governor has power to grant reprieves, commutations, and pardons, after conviction, for all offenses, except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as he may think proper, subject to the regulations provided in this chapter."

Section 1297 of the Penal Code, *supra*, does not encroach upon the Governor's constitutional power to grant pardons, but section 1301 creates a board of pardons and paroles consisting of the state superintendent of public instruction, the Attorney General, and a third member to be selected by those two. Section 1302 provides that:

"Said board shall have exclusive power to pass upon and recommend reprieves, commutations, paroles and pardons, and no reprieve, commutation, parole or pardon shall be granted by the Governor unless the same has first been recommended by said board. All applications made for reprieves, commutations, paroles and pardons made to the Governor shall be at once transmitted to the chairman of the said board, and the said board shall return the same with their recommendation to the Governor."

By section 1302 the Governor has no duty in the premises, except a clerical one. He may sign a pardon, if it be recommended, but not otherwise. The power to grant pardons is not his power, but the board's. If this legislation is valid, article 5, section 5, to the effect that "the Governor shall have power to grant . . . pardons, . . . upon such conditions and with such restrictions and limitations as may be provided by law," has no meaning as conferring a power, but, on the other hand, it means that he may, in the performance of what someone has said "is the most gracious act of government," participate to the extent only of signing his name to the instrument granting mercy.

To uphold this legislation it would be necessary for this court to find that it was the intention of the Constitution makers to give the Governor no power in the granting of pardons, other than a clerical one. If he has no power to grant a pardon except upon a recommendation, then he has no power to refuse to grant a pardon upon a recommenda-

tion. The legislative attempt is to control his discretion, judgment, power in granting mercy, not in refusing it. He is given the implied power to ignore the recommendation of the board, and refuse his signature to a pardon approved by the board, and there is no way of controlling his judgment, power or discretion. If he would extend mercy, mercy must be recommended by the board. Under the constitutional provision, the consent of the board is not essential in either case. It is the Governor's judgment, discretion or power that constitutionally must be brought into action both in the exercise and the refusal to exercise the pardoning power. The effort is to take this power from the Governor, not in the constitutional way, by amendment, but by a legislative act. In its first section (1297) the statute concedes full and complete power of pardon in the Governor to be exercised "as he may think proper," and in subsequent sections attempts to divest him of that power and give the power to the board of pardons and paroles. If the act alone is consulted for the source of the pardoning power, its contradictions would involve the question in great doubt and uncertainty.

The only three state legislatures that have ever created boards of pardon such as that attempted by said act are Michigan, Oklahoma and Washington. Other states have pardoning boards, but, as is said in *Rich* v. *Chamberlain, infra,* they are invariably constitutional boards. The statutory boards of Michigan, Oklahoma and Washington, in so far as they were vested with the pardoning power, have been held unconstitutional under organic laws so much like ours as to give them great persuasive force. Whoever possesses the pardoning power may issue either the unconditional or the conditional pardon; it being generally conceded that the right to grant the former includes the right to grant the latter or lesser. 29 Cyc. 1570.

The great similarity to ours of the constitutional provisions of many other states, and the decisions of the courts construing those provisions, wherever the particular question now before us was involved, may be looked to with profit.

California Constitution, article 7, section 1:

"The Governor shall have the power to grant reprieves, pardons, and commutations of sentence, after conviction, for all offenses except treason and cases of impeachment, upon

such conditions, and with such restrictions and limitations, as he may think proper, subject to such regulations as may be provided by law relative to the manner of applying for pardons.''

The qualifying words, ''conditions, restrictions and limitations,'' are identical with ours in place and meaning, and the provision is the same as ours, except that the legislature in California is authorized to provide the method of applying for pardon, and the Governor may grant pardons as he may think proper, and in ours the legislature is authorized to provide the conditions, restrictions, and limitations of the pardon if granted.

In *Ex parte Kelly,* 155 Cal. 39, 20 L. R. A. (N. S.) 337, 99 Pac. 368, the court said:

''The power of the Governor . . . to grant pardons and commutations . . . is absolute under the Constitution.''

Constitution of Michigan, article 5, section 11, is the same as California, and in *Rich* v. *Chamberlain,* 104 Mich. 436, 27 L. R. A. 573, 62 N. W. 584, the supreme court of that state said:

''This section of the Constitution, in express terms, lodges the pardoning power with the Governor, and with it the co-ordinate branches of government have nothing to do, except as the legislature may by law provide how applications may be made, and is entitled to a report of action taken. *People* v. *Brown,* 54 Mich. 28, 19 N. W. 571; *People* v. *Moore,* 62 Mich. 498, 29 N. W. 80; *People* v. *Cummings,* 88 Mich. 251, [14 L. R. A. 285], 50 N. W. 310; *United States* v. *Wilson,* 7 Pet. 150 [8 L. Ed. 640]; *Ex parte Wells,* 18 How. 307 [15 L. Ed. 421]; *Ex parte Garland,* 4 Wall. 333 [18 L. Ed. 366]. The power conferred by this section of the Constitution is practically unrestricted, and the exercise of executive clemency is a matter of discretion, subject, perhaps, to the remedy by impeachment in case of flagrant abuse. It cannot, however, be treated as a privilege. It is as much an official duty as any other act. It is lodged in the Governor, not for the benefit of the convict only, but for the welfare of the people, who may properly insist upon the performance of that duty by him, if a pardon is to be granted. . . . The office of Governor seems to be generally considered the proper one with which to lodge such responsibility, and the public have the

right to insist upon his performance of the duty. Not only is it beyond the power of the legislature to impose the duty upon others, but it should not in any way lessen his responsibility to the public, when he sets aside the judgment of court and jury by opening the doors of a prison to a convicted felon. If the act in question does this, it should not be sustained.''

Oklahoma Constitution, article 6, section 10:

''The Governor shall have power to grant, after conviction, reprieves, commutations, paroles, and pardons for all offenses, except cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to such regulations as may be prescribed by law.''

The legislature of Oklahoma passed a law creating a board of pardons and paroles, and enacted that the Governor could not pardon or parole until he had presented the matter to, and obtained the advice of, the board of pardons and paroles. The criminal court of appeals of Oklahoma, in *Re Ridley,* 3 Okl. Cr. 350, 26 L. R. A. (N. S.) 110, 106 Pac. 549, adopted the reasoning and language of the Michigan court in *Rich* v. *Chamberlain, supra,* and held that the powers and duties attempted to be conferred on the board of pardons and paroles belonged, under the Constitution, to the Governor, and could not be taken from him nor controlled by the legislative department.

The only difference discernible between our constitutional provision as to the power of pardon and those of California, Michigan and Oklahoma is this: The California, Michigan and Oklahoma Constitutions provide that the Governor shall have power to grant pardons upon ''such conditions, and with such restrictions and limitations, as he may deem proper,'' and our Constitution provides that the Governor shall have power to grant pardons upon ''such conditions and with such restrictions and limitations as may be provided by law.'' The discretion given the Governors of the former states, as to what conditions the pardon shall contain, may be controlled by legislation in this state fixing those conditions. In those states the Governor may specify the conditions ''as he may deem proper,'' but in Arizona the legislature may, under the Constitution, ''provide by law'' the conditions, restrictions and limitations of the pardon, but it cannot control

the power to pardon for that is fixed by the Constitution in the Governor.

Constitution of Arkansas of 1836, article 5, section 11:

"In all criminal and penal cases, except in those of treason and impeachment, he [the Governor] shall have power to grant pardons, after conviction . . . under such rules and regulations as shall be prescribed by law."

In *Ex parte Hunt*, 10 Ark. 284, it was held by the supreme court of that state that the Governor had the constitutional power to grant full and absolute pardons or pardons with such restrictions and conditions as he might deem proper, or pardons with such conditions and restrictions as specified by a legislative act.

Constitution of Washington, article 3, section 9:

"The pardoning power shall be vested in the Governor, under such regulations, and restrictions as may be prescribed by law."

In *State* v. *Jenkins*, 20 Wash. 78, 54 Pac. 765, the supreme court of that state held that the Governor's pardoning power could not, by a legislative act creating a board of pardons with power to recommend pardons, be restricted or controlled, since the power granted the legislature to regulate and restrict did not confer the power to abridge the executive functions.

Some of the states have provided in their Constitutions for the exercise of the pardoning power by pardoning boards, and in every such case the Governor is made a member of the board. Such are the provisions of the Constitutions of Idaho, Minnesota, Montana, Nevada, New Jersey, Pennsylvania, South Dakota and Utah. By the Arizona legislative act the Governor is not a member of the board, and has no voice in its deliberations. He may only announce its findings and carry out its judgments.

Those states vesting the pardoning power in their Governors are Alabama, Arkansas, Delaware, Georgia, Kansas, Missouri, Nebraska, New York, North Carolina, South Carolina, North Dakota, Mississippi, Oregon, Tennessee, Texas, Virginia, West Virginia, Wisconsin, Wyoming, California, Michigan, Washington, Iowa, Ohio and Oklahoma. There is an absence of reported cases from these states wherein the power of the executive has been denied or abridged by any

statutory board. In the states of Michigan, Washington and Oklahoma the power has been attacked, and in those states the courts have denied the right of the legislature to vest such boards with pardoning power, as above noted.

If we resort to the proceedings of the constitutional convention for assistance in arriving at the meaning intended to be given any provision of the Constitution, we find that in the organization of that body certain standing committees were appointed. Committee No. 3 was the "Executive, Impeachment and Removal from Office" Committee. This committee reported to the convention the provision that became, in substance, article 5 of the Constitution as a committee substitute for a number of separate propositions. A committee known as No. 21, "Style, Revision and Compilation," was provided for, to consist of five members. M. J. Cunniff was made chairman, with Ingraham, Cassidy, Lynch and Winberger as members. The convention adopted rules to govern its deliberations. Rule 53 provided:

"The regular order to be taken by propositions introduced in the convention shall be as follows: . . .

"(e) . . . A proposition ordered engrossed shall be referred to the Committee on Style, Revision and Compilation for engrossment.

"(f) So soon as any entire proposition shall have been adopted, such proposition shall be referred to the Committee on Style, Revision and Compilation. The committee shall have power to revise the language used in the interest of grammatical excellence, uniformity, and consistency, but must not in any way destroy the sense of the convention." See Minutes of Constitutional Convention.

Section 5 of article 5 of the Constitution, as adopted and incorporated in the Constitution, is in words and characters as follows:

"Sec. 5. The Governor shall have power to grant reprieves, commutation, and pardons, after convictions, for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as may be provided by law."

The chairman of the Committee on Style, Revision and Compilation, having the arrangement of this sentence under consideration, was a recognized authority on language, having

held a position as instructor of language in one of the most important colleges of the nation. The other members of the committee are men recognized as conversant with our written language. This committee was responsible for the arrangement of the above provision and its grammatical excellence, uniformity and consistency, to preserve the sense of the convention. As arranged, it was approved by the convention. The matter of punctuation becomes important to the understanding of the sentence because of the duty of the Style, Revision and Compilation Committee. The recognized rule of good punctuation of a sentence such as section 5 is to "put a comma between a relative clause and its antecedent, if the clause is nonrestrictive, and in that case only; never put a comma between a restrictive relative clause and its antecedent."

"A restrictive clause is a relative clause the omission of which would make the principal clause meaningless or would change its meaning. A nonrestrictive relative clause is one without which the principal clause would have the same meaning." (I have quoted Edwin C. Woolery, "The Mechanics of Writing," page 121, section 251, and page 122, section 252, and the rules are so elementary that any school text-book on the subject may be consulted with the same effect.) The antecedent here is:

"The Governor shall have the power to grant reprieves, commutation, and pardons, after convictions. . . ."

Now, if the clause "upon such conditions and with such restrictions and limitations as may be provided by law" is to be nonrestrictive according to the rule, a comma should be placed after "convictions." If the clause is a "restrictive relative clause" restricting the antecedent "The Governor shall have power," etc., then, according to the rule, no comma should appear. A comma is there, and if it was placed there by the Style, Revision and Compilation Committee because of the grammatical rules, and approved by the constitutional convention as conveying the sense of the convention, then the clause "upon such conditions and with such restrictions and limitations as may be provided by law" does not restrict the power of the Governor to grant reprieves, commutation and pardons, after conviction. The clause is a nonrestrictive relative clause, without which the principal clause has the

same meaning. I am of the opinion that such was the meaning intended to be conveyed by the provision, and such meaning was given the provision as clearly as words can convey any meaning. The Governor is given the power to grant reprieves, commutation and pardons, after convictions, and that power cannot be taken from him except by amending the Constitution, and this has not been done.

I am of opinion that the board of pardons and paroles, as a board, cannot control, abridge or restrict the powers of the Governor in granting reprieves, commutations or pardons, and that the Governor may act in such matters in disregard of the board or any action taken by it.

For these reasons, the judgment of the trial court should be reversed and cause remanded, with directions that judgment be entered discharging the appellant from custody.