Ex parte Bustillos, 26 N. M. 450.

---

Ex parte BUSTILLOS et al.

[No. 2559. Dec. 28, 1920.]

SYLLABUS BY THE COURT.

1. The pardoning power in America, both in the federal

and state governments, is not, as it is in Great Britain, an attribute of the executive departments, but it is a power which exists only because it is granted by the people, either by constitutional or statutory provision.                                     P. 458

2. This power, in this jurisdiction, is conferred by section 6, art. 5, of the state Constitution upon the Governor, and the ultimate power therein granted is absolute, subject only to such regulations as may be prescribed by law.                          P. 459

3. Section 5087, Code 1915, was not "in force" at the time we came into statehood, and was not carried forward as a part of the law of the state by the provisions of section 4, art. 22, of the Constitution, which did carry forward, as the laws of the state, all the laws "in force" in the territory at the time we came into statehood.                                             P. 460

4. By the adoption of the Code 1915, section 5087 thereof was enacted and became a part of the laws of the state. P. 463

5. Section 5087, Code 1915, taken as a whole, is a clear invasion of the Governor's power of pardon as granted by the Constitution, and for that reason is unconstitutional and inoperative                                                             P. 465

6. No portion of section 5087, Code 1915, can be allowed to stand; the provisions therein which are not objectionable not being severable under proper construction from those which are objectionable.                                              P. 466

7. The provisions of section 6 of article 5 of the Constitution are self-executing, and require no legislative action to enable the Govenor to exercise his power of pardon.        P. 467

8. A person in the custody of one authority or court has no legal interest in the question as to whether another authority or court has the right to arrest him. Such a question concerns only the two opposing authorities or courts.        P. 467

9. Where the superintendent of the penitentiary has been enjoined from releasing prisoners pardoned by the Gover ior, such persons are not legally interested ih the question as to whether the superintendent has violated the injunction in allowing them to be arrested for another crime. The question in such a case is between the superintendent and the court which issued the injunction.                                 P. 469

Application by Ramon Bustillos and others for a writ of habeas corpus. Writ discharged, and petitioners remanded to custody.

RENEHAN & GILBERT and NICHOLAS D. MEYER, all of Santa Fe, for petitioners.

Ex parte Bustillos, 26 N. M. 450.

The restraining order of the district court is ineffective insofar as it attempts to affect petitions.

A.   Because Edward Safford was not a proper party plaintiff.   Peeples v. Byrd, 98 Ga. 693; Birmingham v. Cheetham, 19 Wash. 659; Givens v. McElroy, 79 Mo. App. 671; School District v. Shaddock, 25 Kans. 467; Mechem, Public Officers, Secs. 954-987-988.

B.   Because the petitioners were not parties to the suit.   State v. Anderson, 5 Kans. 90; Jeffries v. Nation, 65 Pac. 226; Walker v. Cambern, 47 Pac. 980; Case v. Minot, 158 Mass. 577.

The validity of the pardons could not be attacked on habeas corpus, where that invalidity did not appear on their face, for the reason that such an invalidity is not the subject of collateral attack, but can only be raised in a direct proceeding in the nature of scire facias. Knapp v. Thomas, 39 Oh. St. 385; In re Endymoin, 8 How. Prac. 478; Ty. v. Richardson, 9 Okla. 589.

Section 5087, Codif. 1915, was invalid when originally enacted because in contravention with the organic act.

Governor's power to pardon, Sec. 3, Organic Act. Limitation on legislative power, Sec. 7, Organic Act.

Attempted legislation in contravention of Sec. 7, supra, void from inception, no matter when declared void by the courts.   In re Attorney General, 2 N. M. 49; Terr. v. Richardson, 9 Okl. 579; In re Moore, 4 Wyo. 103.

Said section being unenforceable, the same was not affected by the adoption of our constitution.   Art. XX, Sec. 4, N. M. Const.

Even though the statute had "remained in force" under Art. XX, Sec. 4, N. M. Const., the removal of the prohibition in the organic act would not give any validity to the act, the continuation in force by the constitution not being a reenactment.   1 Sutherland, Stat. Const., p. 176, Secs. 107-108; Jones v. McKaskill, 112 Ga. 453;.

Erie v. Brady, 150 Pa. St. 462; Norton v. Shelly, 118 U. S. 425.

Sec. 5087 not reenacted by the Codification of 1915.

A. It was an "existing statute," even though unenforceable, and therefore, by the terms of the codification was not reenacted. Par. 2, Repealing and Saving Clause, Cod. p. 1665.

B. It was not the intention of the legislature to enact any new legislation. Preface to Cod. 1915, p. 4.

Even if the legislature had intended to reenact Sec. 5087 it would be unconstitutional.

A. Because its purpose is not expressed in the title, "An Act to Codify the Laws of the State of New Mexico." The subject of all bills must be expressed in their title, even when the bill is a codification. Sec. 16, Art. IV, Const. of N. M.

B. Because it would be an attempt to abrogate the pardoning power under the guise of regulation. Richardson v. Chamberlain, 104 Mich. 436; Ex parte Hunt, 10 Ark. 284; Ex parte Reno, 66 Mo. 266.

The provisions of the section that "all applications for pardon * * * shall be first submitted to the Board of Penitentiary Commissioners, can not stand as a separable provision of the act, for that provision is only incidental to the unconstitutional provision limiting the right to grant pardons to cases where recommendations have been made by the board, and merely furnishes a procedure for carrying that unconstitutional provision into effect. 1 Sutherland Statutory Const., Sec. 301-304-305; Randolph v. Builders, etc., 106 Ala. 501; Ex parte Towles, 48 Tex. 413; State v. McClintock, 35 La. Rep. 140; Ex parte Wells, 21 Fla. 218; Hince v. People, 92 Ill. 406.

Even if that provision relative to the application for pardons were valid, the failure to follow its provisions would not invalidate the pardons. In re Edymoin, 8 How. Prac. 478; In re pardoning power, 85 Me. 549.

There are two indispensable conditions for the severability of statutes in order that the constitutional part may be separated from the unconstitutional part and stand, one of which is that the two parts may be read and stand by themselves, and that the unconstitutional part is not so connected with the general scope of the laws as to make it impossible, if it is stricken out, to give effect to the apparent intention of the legislature in enacting it. Poindexter v. Greenhow, 114 U. S. 270; Baldwin v. Franks, 120 U. S. 679; Allen v. Louisiana, 103 U. S. 80; U. S. v. Reese, 92 U. S. 214; The Trademark cases, 100 U. S. 82; U. S. v. Harris, 106 U. S. 629; The Virginia coupon cases, Poindexter v. Greenhow, 114 U. S. 270; Sprague v. Thompson, 118 U. S. 90; The Income tax cases, Pollock v. Farmers Loan & Trust Co., 158 U. S. 601; Cella Com. Co. v. Bollinger, 147 U. S. 423; State v. Brooken, 19 N. M. 404.

O. O. ASKREN, Attorney General, and H. S. BOWMAN, Assistant Attorney General, for the State.

Section 5087, Code 1915, was Section 53, Ch. 76 of the Laws of 1889, and at the time of its passage was invalid by virtue of the provision in the Organic Act vesting unlimited and unrestricted power in the Governor of the Territory to grant pardons. 20 R. C. L., 540, Sec. 22; Fite v. State, 114 Tenn. 646, 88 S. W. 941; 4 Annotated Caces, 1108; L. L. R. A. (N. S.) 520; Note to 111 A. S. R. 108; Ritch v. Chamberlain, 104 Mich. 436; 62 N. W. 584; 27 L. R. A. 573; In re Ridley, 3 Okl. Crim. 350, 106 Pac. 549, 26 L. R. A. (N. S.) 110; In re Moore, 31, p. 980, 4 Wyo. 98; Territory of Oklahoma v. Richardson, 9 Okl. 579; State v. Jenkins, 54 Pac. 765 (Wash.) 10 Ark. 284.

Section 5087, being void because in conflict with Section 3 of the Organic Act of the Territory, not an existing law, and therefore not continued in the Code by the repealing and saving clause.

Section 5087 not enacted as new legislation by the Code. 2 Lewis' Sutherland Statutory Construction,

(2d Ed.), Secs. 450 and 451; Robertson v. State, 70 Tex. Cr. R. 307, 159 S. W. 713; Lyon v. Ogden, 85 Me. 374; 27 Atl. 258; Hooper v. Creager, 84 Md. 195; 35 Atl. 967; 35 L. R. A. 202; Lewis v. Dunne, (Col.) 55 L. R. A. 833 and note; Bassett v. U. S., 137 W. S. 506, 34 L. Ed. 762; Mobile & O. R. Co. v. Weiner, 49 Wis. 725, 39.

Section 5087 void and ineffectual from the time of its attempted enactment. Cooley Const. Lim, 227; State v. Tufly, 20 Nev. 427.

Power to pardon not to be restricted or limited by a provision for regulation by law. In re Edymoirs, 8 Howard's Pr. 478; Ex parte Ridley, supra; Finley v. Heinza, 27 Mont. 107; 69 Pac. 829, 32.

Sec. 6, Art. V, of the Constitution self executing. Woodward v. Mendock, 124 Ind. 439, 42; Ex parte Ridley, supra.

CATRON & CATRON, Amicus curiæ.

Has the Governor of the State of New Mexico the absolute power of pardon, or is the power restricted or limited by Article 5, Section 6, State Constitution, and Section 5087, Code 1915? Section 3, Organic Act, Sec. 3542, C. L. 1897.

If we consider from an historical standpoint generally the question of pardons, we find that the pardoning power was inherent in the crown; that in the United States, when established as a republic, there being no king, all of the inherent powers formerly in England vested in the king, vested in the people of the United States. Thus we find that the pardoning power in the United States is inherent in neither the executive, legislative or judicial branches of the Government, but solely in the people, and there remains and resides until the people by constitutional grant divest themselves of this power and vest it in one or more of the branches of the government, that is, the executive, legislative or judicial.

Section 5087, 1915 Codification of New Mexico, is in force regardless of whether it be considered a continua-

tion of an existing statute or an enactment of new legislation. Art. 22, Sec. 4, State Const.; Saving Clause, Code 1915; Art. 5, Sec. 6, State Const.

The provision of our Constitution clearly would not be self-executing for the legislature, under the terms of the Constitution, must act before the Governor acquires any rights, and having failed to act, no power has passed.

In the case of Delgado v. Romero, 17 N. M. 81-86, we find the following rule as to self-executing provisions of a constitution:

"A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed or protected, or the duty imposed may be enforced."

OPINION OF THE COURT.

PARKER, C. J. The petitioners in this proceeding are persons commonly known and designated as "the Villistas." They derived this designation from the commonly reputed fact that they were members of a marauding band of Mexicans, who, under the leadership of one Francisco Villa, the notorious bandit of Mexico, crossed the international boundary line on March 9, 1916, and attacked the town of Columbus, in Luna county, in this state, and killed a number of our citizens without any conceivable cause or provocation. Had the petitioners been members of the army of any recognized government in Mexico, the episode would undoubtedly have furnished ample ground for war with our neighboring republic. They were, however, according to current historical report, members of a company of bandits, under the leadership of Villa, and as such were entitled to none of the considerations or protection from criminal prasecutions accorded to members of a recognized military organization.

The petitioners and their associates, after their dastardly attack, retreated into Mexico, and were pursued by our troops under the command of Gen. Pershing, and were there captured and returned into the United States.

They were indicted for the crime of murder in Luna county, and all but one of them pleaded guilty to murder in the second degree and received life sentences in the penitentiary. One of the petitioners was tried and convicted of murder in the first degree and sentenced to death, but his sentence was subsequently commuted to life imprisonment. All of the petitioners were confined in the penitentiary at Santa Fe under their respective sentences, until on November 22d, 1920, Hon. O. A. Larrazolo, governor of the state, issued to each of them an unconditional pardon for their said crimes. On November 24, 1920, there was filed in the district court of the first judicial district, sitting in and for Santa Fe county, a complaint for an injunction against the superintendent of the penitentiary restraining him from liberating the petitioners by reason of the said pardons. That cause came on for hearing on the 6th day of December and resulted in a judgment restraining said superintendent of the penitentiary from releasing or discharging the petitioners until after the applications for pardons shall have been submitted to the board of penitentiary commissioners, and until said commissioners shall have recommended their pardons to the Governor, and until the Governor shall have weighed and considered such recommendation and shall have thereafter granted the pardons to the petitioners. From this judgment an appeal has been allowed to this court, but the case is not before us for consideration, the record not having been perfected in this court. After the issuance of said pardons, the Governor left the state, and the Lieutenant Governor, Hon. Benjamin F. Pankey, acting as Governor, ordered the superintendent of the penitentiary to hold the said prisoners until further orders of the executive of the state, or of the courts.

The petition for the writ recites upon information and belief that the superintendent of the penitentiary was refusing to give the petitioners their liberty on account of the decree in the injunction suit. The return to the writ recites that the petitioners are held and restrained of their liberty by reason of commitments is-

sued by the district court of Luna county in pursuance of the sentence of the court as to all of the petitioners except one, and as to him by virtue of an executive order commuting his sentence from that of death to life imprisonment. It further justifies the restraint by virtue of the injunction order. It further attacks the validity of the pardons upon the ground that the Governor has no power to pardon, except with the concurrence of the board of penitentiary commissioners. It further justifies the restraint of the petitioners by reason of the executive order of Hon. Benjamin F. Pankey, as acting Governor. It further justifies the restraint of the petitioners by virtue of a certain order for safe-keeping of the petitioners, which was delivered to the superintendent of the penitentiary by the sheriff of Luna county, said sheriff having arrested said prisoners on the charge of murder of a person other than that for which the petitioners were convicted and imprisoned, said charge being still pending in the county of Luna undisposed of.

The petitioners answered the return to the writ, most of which answer consists of conclusions of law, but they admit the service of the new warrants upon them by the sheriff of Luna county, and that the sheriff has committed them to the custody of the superintendent of the penitentiary for safe-keeping, but they deny the power of the sheriff so to do.

• The case was very carefully and ably argued from all standpoints and submitted to the court. On account of the importance of discussing the executive power of pardon under the Constitution, the case deserves extended examination, which has been given by us with the result as appears following:

[1] A brief examination of the law of pardon, with reference to its origin and character, would seem not to be undesirable. At common law in England, whence comes largely our principles of government, the power to pardon was vested in the king. It was a sovereign right and an attribute of the crown. The king, in his coronation oath, promised to execute justice with mercy.

4 Black. Com. 396, 20 R. C. L. "Pardon, etc.," §§ 5, 24; Ex parte Wells, 18 How. 307, 15 L. Ed. 421.

Without such a power reposed in some officer or body, no government in this day and age could be considered as politically moral. By this power the unfortunate defendant may make his last appeal, sometimes with partial and sometimes with complete success. It is necessary that this be so to meet the requirements of modern and enlightened civilization, as there may be at times circumstances which ought to be controlling, but which the strict law will not recognize.

The power of pardon in England was not an unrestricted power. Many statutes were there enacted restricting and regulating the exercise of the power. See 4 Black. Com. pp. 398, 399; Ex parte Wells, 18 How. 307, 15 L. Ed. 421, where most of the limitations on the power in England are enumerated.

In this country, however, while the power is present under both the federal and state governments, it is not an inherent attribute of the executive department, but rests solely in a grant by the people. 20 R. C. L. "Pardon, etc.," § 24; Laird v. Sims, 16 Ariz. 521, 147 Pac. 738, L. R. A. 1915F, 519. This proposition is fundamental and in consonance of the general principle that in America the sovereignty resides in the people, and all governmental power is a result of a grant from them.

[2] The pardoning power in this country is usually, if not universally, conferred by constitutional provisions, and it is usually conferred upon the Governors of the respective states, unrestrained by any direct limitations of law. The head of the executive department is believed by the American people to be generally so self-restrained, so imbued with patriotism, so conscious of the responsibilities of his high office, that he will never abuse the power and will always exercise the same in the interests of the state as a whole, to the exclusion of all sordid, personal, political, or other ulterior motives. This is as it should be. Public officers, to be

strong and effective, must have power and responsibility. If their activities are so, circumscribed by restrictions as to prevent all initiative and independence, their power for good in behalf of the people will be greatly minimized. They may sometimes go astray; but the damage thereby to the state will be negligible, compared to the damage resulting from weak and dwarfed public service. In this jurisdiction the pardoning power is conferred upon the Governor in the following language:

"Subject to such regulations as may be prescribed by law, the Governor shall have power to grant reprieves and pardons, after conviction for all offenses except treason and in cases of impeachment," Article 5, § 6, State Const.

Under this provision, there is a plain and clear grant of the pardoning power. There may be regulations by law of the manner of its exercise, but the ultimate power and right to pardon is granted, unrestrained by any consideration other than the conscience and wisdom and the sense of public duty of the Governor. No other board or person is to be consulted, nor is their approval to be obtained. The decision rests solely· with the executive.

Many of the state Constitutions have similar provisions, expressed in somewhat varying terms. But the general trend of opinion of the people, as expressed in the various Constitutions, is the same as here.

Just what regulations might be provided governing the exercise of the power it would be improper for us to attempt at this time to enumerate. But that the exercise of the power may be regulated by law is not to be questioned, so long as the prescribed regulation does not impair the ultimate power granted.

[3] It is argued that we have regulations prescribed by law for the exercise of the power which have been ignored or ·violated by the Governor in this instance, rendering the pardons invalid and of no effect. We have a provision on this subject which is codified as section 5087, Code 1915, and is as follows:

"All applications for the pardon or commutation of any sentence of any convict confined in the penitentiary shall be first submitted to the board of penitentiary commissioners, with all the facts connected with the conviction and sentence of such convicts, and any such other facts as may be thought proper, and said board of penitentiary commissioners shall examine into the same and make such recommendation on the same as to them may appear proper; but no convict, who shall have been sentenced to the penitentiary, shall be pardoned before the expiration of his time, or have his time commuted by the Governor, unless the same be first recommended by the board of penitentiary commissioners, and it shall be the duty of the Governor to weigh and consider all recommendations for pardon or commutation made by said board, and if he finds them reasonably well founded, to grant the pardon or commutation as recommended, or such commutation of time as he may deem proper."

It is argued that, by virtue of section 4, art. 22, of the Constitution, section 5087, Code 1915, was, in a sense, enacted with all other territorial laws in force at the time. That section of the Constitution is as follows:

"All laws of the territory of New Mexico in force at the time of its admission into the Union as a state, not inconsistent with this Constitution, shall be and remain in force as the laws of the state until they expire by their own limitation, or are altered or repealed; and all rights, actions, claims, contracts, liabilities and obligations, shall continue and remain unaffected by the change in the form of government."

It will be necessary in this connection to examine the history of section 5087. It appears that this section was section 53 of chapter 76, Laws 1889. The act provides for a board of penitentiary commissioners, makes detailed provision for the maintenance, government, and police of the penitentiary, good time allowance to prisoners in case of nonviolation of the rules of the prison, pardon and restoration to citizenship upon the completion of the term of the sentence, and other matters, including section 5087, Code 1915.

At the time of the passage of this act, we had the territorial form of government, and the powers of the territorial Governor were prescribed by the act of Congress under which the territory was organized. That act (9 Stat. 447, c. 49) was approved September 30,

1850, and section 3 thereof provides, among other things, that the Governor "may grant pardons for offenses against the laws of said territory, and reprieves for offenses against the laws of the United States, until the decision of the President can be made known thereon." Here was a grant of absolute power of pardon for offenses against the laws of the territory, unrestrained by any limitation or regulation whatever, and the act of the Legislature of 1889 (section 5087, Code 1915) was necessarily unconstitutional and inoperative to restrain the power of the Governor. The act was considered and treated as a dead letter by all the departments of the territorial government so long as that remained in existence.

It is argued, however, that while the act may have been unconstitutional and inoperative, nevertheless it had never been so determined by any court of competent jurisidiction, it had not been disapproved by Congress, and it had never been repealed, and consequently it was "in force" within the meaning of the Constitution, which continued in force the territorial legislation. Without stopping to discuss the real nature and character of an unconstitutional act, it is sufficient to say that, when a statute is adjudged to be unconstitutional, it is as if it had never been. Cooley, Const. Lim. (7th Ed.) p. 259. We are now determining that the act was unconstitutional when enacted and thereafter during the territorial existence, and therefore it could from no standpoint be said to have been "in force" at the time of the adoption of the Constitution. A specific application of this reasoning is to be found in some of the cases. Thus in Re McFarland's Estate, 10 Mont. 445, 26 Pac. 185, the question was whether certain sections of the territorial laws had been continued as laws of the state of Montana under a constitutional provision as follows:

"All laws enacted by the Legislative Assembly of the territory of Montana, and in force at the time the state shall be admitted into the Union * * * shall be and remain in full force as the laws of the state, until altered or repealed, or until they expire by their own limitation."

The territorial Legislature of Montana had passed an act providing for an appeal directly from the probate courts of that state to the Supreme Court, but the Organic Act of the territory of Montana provided only for an appeal from the district courts to the Supreme Court of the territory. The Supreme Court of Montana held that the territorial statute providing for such appeals was null and void as being in contravention of the Organic Act of that territory, and that the same were not carried forward so as to become laws of the state of Montana by the constitutional provision above mentioned. In De Lamar v. Dollar, 128 Ga. 57, 57 S. E. 85, the question was as to whether an act which violated the right of trial by jury and which antagonized the constitutional guaranties as to jury trial, was carried forward by a new constitutional provision in the Constitution of 1877, which provided that all laws then of force in the state not inconsistent with the Constitution and ordinances of the convention should remain in force until modified or repealed by the General Assembly. The court said:

"Any law upon the statute books which was repugnant to the Constitution of 1868 was not of force in this state at the date of the Constitution of 1877, and hence the provisions in the county court act of 1872 above referred to were not saved by the provision in the Constitution of 1877 preserving existing laws."

We therefore hold that section 5087, Code 1915, was not in force in the territory when we came into statehood, and was consequently not made a law of the state by section 4, art. 22, of the Constitution.

[4] It is further argued that, by the adoption of the Code of 1915, section 5087 became a law of the state. The title of the act adopting the Code is: "An act to codify the laws of the state of New Mexico." At the conclusion of the act there is a provision interpreting the act as follows:

"The provisions of the foregoing sections taken or adopted from existing statutes, shall be construed as continuations thereof and not as new enactments."

Under these circumstances, then, the question is as to the effect of the act of codification upon sections like 5087, which, as we have seen, were inoperative by reason of being unconstitutional at the time of adoption and at all times thereafter until codified by the act under consideration. If the interpretative provision above referred to was absent from the act, there could be no doubt of its scope and meaning. There is the general enacting clause at the beginning of the act, and, under all rules of construction and interpretation, every section from the first to the last is to be held to be enacted by the act. It will be immaterial as to the source of the matter included in the act, whether coming from old statutes, decisions of the court, or whether the matter be entirely new. 11 C. J. p. 940; Code, § 1; Lewis v. Dunne 134 Cal. 291, 66 Pac. 478, 55 L. R. A. 833, 86 Am. St. Rep. 257; Central Ga. R. Co. v. State, 104 Ga. 831, 31 S. E. 531, 42 L. R. A. 518. . In speaking of the codification of the laws of Georgia, the court said:

"Its general object is to embody as nearly as practicable all the law of a state, from whatever source derived. When properly adopted by the law-making power of a state, it has the same effect as one general act of the Legislature containing all the provisions embraced in the volume that is thus adopted. It is more than evidentiary of the law; it is the law itself."

See, also, State v. Barnes, 108 Minn. 230, 122 N. W. 11; Daniel v. State, 114 Ga. 533, 40 S. E. 805; Bates v. State, 63 Ala. 30; State v. Towery, 143 Ala. 48, 39 South. 309.

The interpretative clause, however, introduces into the consideration an element of uncertainty which must be cleared up. It is to be remembered that, as we have seen, the legislative intent was to enact every section appearing in the Code, except, of course, certain local and special acts which are compiled for convenience merely. There is no declaration in the clause that all the laws appearing in the Code have been taken or adopted from existing statutes. The clause merely puts forward a rule of construction to the effect that in all cases where pro-

visions have been taken or adopted from an existing statute it shall be construed as a continuation thereof, and not as a new enactment. This view is confirmed by the further provisions in the interpretative section to the effect that, in case of conflict between sections of the Code, resort may be had to the dates of the passage of the original act from which such sections were taken. So it appears the Legislature intended that old existing statutes taken or adopted and enacted into the Code should maintain the same relative status in the body of the law of the state as when originally enacted, and should acquire no new or controlling importance by reason of their present enactment into the section of the Code.

In regard to section 5087, it was enacted into the Code along with the other sections. Whether it was an existing statute'' has been the subject of argument in the case. While, as we have seen, it was inoperative because it was unconstitutional, it might be said to be an ''existing statute'' because it was enacted by the Legislature and had never been repealed, qualified, or disapproved by any controlling authority. In this sense it was an ''existing statute'' and was adopted and enacted into the Code. On the other hand, if it was not an existing statute by reason of its unconstitutionality, it was enacted into the Code as new matter which, as we have seen, was entirely allowable. In either event it became a component part of the laws of the state.

[5] We have then this situation: A constitutional grant of the pardoning power to the Governor subject to regulation by law. Section 5087 provides not only regulation of the exercise of the power; but imposes a restriction upon the power itself. The section absolutely prohibits the exercise of the power without the previous concurrence and recommendation of the penitentiary commissioners. This is a plain invasion of the rights and duties of the executive. It lies with the penitentiary commissioners to absolutely nullify the grant and to prohibit the Governor from the exercise of his discretion

in this regard. For this reason the section, taken as a whole, must be held to be unconstitutional and inoperative. See Exparte Ridley, 3 Okl. Cr. 350, 106 Pac. 549, 26 L. R. A. (N. S.) 110; Laird v. Sims, 16 Ariz. 521, 147 Pac. 738, L. R. A. 1915F, 519; State ex rel. Rogers v. Jenkins, 20 Wash. 78, 54 Pac. 765; Rich v. Chamberlain, 104 Mich. 436, 62 N. W. 594, 27 L. R. A. 573; Ex parte Hunt, 10 Ark. 284; Knapp v. Thomas, 39 Ohio St. 377, 48 Am. Rep. 462.

[6] It was suggested in argument that a part of the section might be valid and might be sustained, although the remainder thereof was admittelly beyond legislative power. It is suggested that the first part of the section which provides for the investigation of applications for pardons, and a recommendation thereon by the penitentiary commissioners, might be allowed to stand as a proper regulation of the exercise of the executive power. This might well be under other conditions. We have before seen that the executive power is, under the constitutional grant, subject to regulation by law. But can it be said that this regulatory provision is so separate, distinct, and complete in itself as that the Legislature may be held to have intended that it might stand regardless of the restrictive portion of the section. Can it be said that the Legislature would have passed the first clause of the section without the last. We think not. The main object of the section is to place a restriction on the executive power and to take from the Governor the right to exercise his own discretion in regard to pardons. The section consists of a single sentence, and the first clause thereof is designed merely to provide the procedure whereby the penitentiary commissioners are to formulate a statement to the Governor which is, or at least may be, designed to inform him that he must not exercise his constitutional right. Under such circumstances the whole section must be held to fail and be inoperative. Judge Cooley upon this subject says:

"If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect com-

plete and valid as to the other.  But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portion.  And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the Legislature intended them as a whole, and, if all could not be carried into effect, the Legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them."  Cooley, Const. Lim. (7th Ed.) pp. 247, 248.

See, also, Black, Int. Laws (2d Ed.) p. 116; 1 Lewis' Sutherland, Stat. Con. (2d Ed.) § 297; Skagit Co. v. Stiles, 10 Wash. 388, 39 Pac. 116.

[7] It is suggested by counsel that, if section 5087 is unconstitutional and inoperative, there are no regulations of the pardoning power provided by law, and consequently the power cannot be exercised; in other words, it is argued that the constitutional provision is not self-executing.

The power granted is of such a nature as to require no regulation.  It is simply a one-man power, depending for its execution upon nothing more than the stroke of the pen of the Governor.  Under such circumstances the constitutional provision is clearly self-executing and requires no Legislature to make it effective.  See Delgado v. Romero, 17 N. M. 81, 124 Pac. 649, Ann. Cas. 1914C, 1114; Lanigan v. Gallup, 17 N. M. 627, 131 Pac. 997; Woodward v. Murdock, 124 Ind. 439, 24 N. E. 1047; Finlen v. Heinze, 27 Mont. 107, 69 Pac. 829, 70 Pac. 517.  The Indiana case supra is directly in point.

[8] As appears in the return of the superintendent of the penitentiary, he holds the custody of the peitioners by reason of the commitment or order from the sheriff of Luna county to hold them in the penitentiary for safe-keeping pending the determination of indictments for murder against them still pending in Luna county, for which the sheriff has served warrants of arrest.  It is argued that there could be no arrest of the petitioners in the circumstances in which they are situated, because

they were being held by the superintendent of the penitentiary under their former commitments, and therefore the sheriff had no power to reduce the men to physical custody and control. The whole argument is based upon a misconception of the law in regard to arrest. It may be that an arrest may not technically be effectuated without securing the physical custody of the defendants, either actual or constructive, but in this case, as appears from the return of the superintendent of the penitentiary, such arrest was in fact accomplished by the sheriff of Luna county. It is only where there is a conflict of right or jurisdiction to the custody of a person that the question of the right of arrest arises. A person under arrest by one authority has no legal interest or right which he can assert against his arrest by another authority. In such a case, if the authority first arresting the person yields to the second authority, the person concerned has suffered no legal injury. It is purely a matter of comity between courts and authorities and is based upon the doctrine that the courts or authorities which first obtain the custody of the prisoner may retain the same until he has been fully dealt with.

Thus in U. S. v. Marrin (D. C.) 227 Fed. 314, the petitioner applied to the federal court for release on habeas corpus because he had been sentenced to the penitentiary in the state of New York by a state court, and was taken by the federal authorities while he was under parole, but by the terms of the parole he was not released from the custody of the state authorities, nor from the sentence. The federal authorities removed him from the state, and he sought his release on the same ground urged here, that is, that he was not subject to arrest because he was serving a sentence under commitment from another court. The federal court held that only the state of New York could raise the question of its jurisdiction over the petitioner, and said:

"The position of the United States here is that the doctrine is applied wholly and solely out of the deference paid by one court to another, and if that court which under the rule mentioned would be accorded full and free sway for the assertion

Ex parte Bustillos, 26 N. M. 450.

of its power yields to the exercise of the jurisdiction of the other court, no right of the individual defendant concerned is involved. In other words, the court which has the possession of the person of a defendant who is also subject to the control of another court will exercise its power in accordance with a discretion which is governed in its exercise by the rule of comity, to which reference has been made. This is the principle which has been heretofore applied in the case of the present defendant, and which has sufficient supporting authority in Mahon v. Justice, 127 U. S. 700, 8 Sup. Ct. 1204, 32 L. Ed. 283."

But in this case no such question could arise. The petitioners were sentenced to the penitentiary by the district court of Luna county, and it was this same court that issued the warrants for their subsequent arrest. The petitioners, if they were legally confined, were serving a sentence under commitment of the court which issued the subsequent warrants, and that court had the power to take control of the petitioners under the new warrants, even though they were at such time legally serving the original sentence. If, on the other hand, as we have held, the pardons issued to the petitioner were valid, then they were being illegally held by the superintendent of the penitentiary, and he was at liberty to submit them at any time to the lawful arrest of the sheriff of Luna county. The validity of the arrests by the sheriff is not impaired by reason of the fact that the petitioners were at the time restrained illegally of their liberty by the superintendent of the penitentiary. Mahon v. Justice, 127 U. S. 700, 8 Sup. Ct. 1204, 32 L. Ed. 283. See, also, Voorhees on the Law of Arrest (2d Ed.) § 219, where the author says:

"Upon an extradition charge where an arrest is illegally made on a telegram, without a warrant, it is not necessary first to discharge the prisoner from illegal custody before re-arresting him on a legal process subsequently issued in a criminal matter."

[9] It is argued that the arrests were illegal because of the injunction restraining the superintendent from discharging the petitioners under the pardons. This is an inconsistent position for the petitioners to take. They first argue that the injunction proceeding was void

and of no effect upon them for the reason, among others, that they were not parties to the proceeding. They now base their opposition to the legality of the arrest upon the ground that the arrest could not be effectuated by reason of the injunction. It is clear that the question as to the validity of the injunction is between the superintendent of the penitentiary and the court which issued it. It is a matter of no concern of the petitioners. The injunction did not bind the petitioners, nor the sheriff of Luna county, as they were not parties to the proceeding, and, if the superintendent of the penitentiary has violated the injunction in allowing the petitioners to be arrested by said sheriff, that is a matter which concerns him and the court which issued the injunction and no one else. See Acequia Del Llano et al. v. Acequia de Las Joyas, 25 N. M. 134, 179 Pac. 235.

From all of the foregoing it appears that the petitioners, notwithstanding the pardons issued by the Governor are not now entitled to be discharged from custody by reason of their subsequent arrest and commitment to the custody of the superintendent of the penitentiary, and that the writ of habeas corpus should be discharged and the petitioners remanded to custody; and it is so ordered.

ROBERTS, J., and BRATTON, D. J., concur.